IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


| | | |
|---|---|---|
| ROGER LATTA and JACQUELINE LATTA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | NO. 2:03-CV-41 |
| WALTER CHAPALA, et al., | ) ) | |
| Defendants. | ) | |


## ORDER

This matter is before the Court on the Michigan City Defendants' Motion for Summary Judgment [DE #122], filed by Defendants, Jeffrey Cuma and the Michigan City Police Department, on April 19, 2005.  For the reasons set forth below, the motion is **GRANTED**.  The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiffs' claims against Defendants, Jeffrey Cuma and the Michigan City Police Department.


BACKGROUND

On February 5, 2003, Plaintiffs, Jacqueline and Roger Latta, filed a complaint against numerous defendants for damages arising out of the Lattas' arrest and conviction for the murder of their son, Brad.[1]  The complaint was amended on June 26, 2003, and a second

---

[1]Three other motions for summary judgment have been filed by various other defendants.  For the sake of simplicity, this order

amended complaint was filed on April 6, 2004.  The second amended complaint alleges that Plaintiffs' constitutional rights under 42 U.S.C. section 1983 were violated during the course of their prosecution for the death of their son.

Plaintiffs' section 1983 claim stems from a fire that occurred on February 14, 1989, in which their two-year-old son died. Plaintiffs were arrested for felony murder for "committing or attempting to commit the crime of Arson" which resulted in the death of Brad Latta in May 1989.  (Defs.' Ex. FF, Aff. for Probable Cause.) Following a one month trial in the LaPorte County Superior Court, on April 14, 1990, Defendants were found guilty by a jury of felony murder.  The Lattas were convicted and sentenced to 50 years in the Indiana State Prison.  (Defs.' Ex. H, sentencing reports.)  The Lattas appealed their criminal convictions, but the Indiana Court of Appeals affirmed.  Plaintiffs then filed a motion for post-conviction relief in the trial court, which was also denied.  The Lattas then appealed the denial of the post-conviction relief to the Indiana Court of Appeals.  On January 24, 2000, the Indiana Court of Appeals reversed Jacqueline Latta's conviction as a result of an actual conflict that existed between the Latta's joint criminal defense counsel, and the court remanded for a new trial.  *Latta v. State*, 722 N.E.2d 389 (Ind. Ct. App. 2000).  On March 16, 2001, the Indiana Supreme Court held

---

only analyzes the motion for summary judgment filed by Defendants, Jeffrey Cuma and the Michigan City Police Department (hereinafter "Defendants").

that the Lattas received ineffective assistance of counsel, reversed the denial of post-conviction relief, and remanded for a new trial. *Latta v. State*, 743 N.E.2d 1121 (Ind. 2001). On remand, all charges against the Lattas were dismissed. Following dismissal of the charges, the Lattas were released from jail.

Cuma was a police officer for the Michigan City Police Department, who was also a representative on the LaPorte County Homicide Unit. Cuma participated in the fire investigation, interviewed the Lattas' neighbors, and was assigned the task of interviewing Jacqueline Latta. Two days after the fire, on February 16, 1989, Jacqueline was questioned by Officer Sue Yadavia of the Michigan City Police Department, and Phil Shott of the LaPorte County Sheriff's Department, then questioned by Arland Boyd of the Indiana State Police, then questioned by Cuma. Prior to Cuma's questioning of Jacqueline, Boyd told Cuma that Jacqueline had admitted to setting the fire. During Cuma's unrecorded questioning (which he conducted alone), Jacqueline denied responsibility for the fire, but did state that she was sorry her son had died, and she did not want people to think she was a cold blooded murderer. Plaintiffs claim Jacqueline had taken a large quantity of Xanax, a depressant which could cause hallucinations, prior to being interviewed by the police, and that the police used coercive and deceitful tactics during the interrogations.

Defendants filed their memorandum of law in support of Michigan City Defendants' Motion for Summary Judgment on April 19, 2005.

Defendants argue that summary judgment is appropriate for a number of reasons, as enumerated in their motion for summary judgment. Plaintiffs filed their memorandum of law in opposition to Michigan City Defendants' Motion for Summary Judgment on May 20, 2005. Defendants filed a reply memorandum on May 27, 2005. Having been fulling briefed, this motion is ripe for adjudication.

DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989).  "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial."  *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.  In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

To state a claim under section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *see also Cunningham v. Southlake Ctr. for Mental Health*, 924 F.2d 106, 107 (7th Cir. 1991). The preliminary step in any section 1983 claim is to determine which of Plaintiffs' substantive constitutional rights were allegedly violated. *Spiegel v. Rabinovitz*, 121 F.3d 251, 254 (7th Cir. 1997).

As to the instant Defendants, Cuma and the Michigan City Police Department, although the amended complaint is somewhat unclear, taking the complaint and the parties' arguments together, the Court considers that the following claims have been asserted under 42 U.S.C. section 1983: Jacqueline Latta's conviction was the result of an involuntary confession; Plaintiffs' due process rights were violated during Cuma's investigation, interrogation, and incomplete testimony; Plaintiffs' rights under the equal protection clause were violated; Cuma performed an incomplete neighborhood canvass; Cuma drafted an incomplete/slanted police report; Jacqueline Latta was deprived of her right to counsel; Cuma concealed exculpatory material; Cuma was part of a conspiracy to convict Plaintiffs; and the Michigan City Police Department provided

-6-

inadequate training and failed to follow policy.

The Court notes that Cuma was sued individually and as a police officer for the Michigan City Police Department.  When individual officers of a police department, such as Cuma, are sued in their official capacity, the suit is treated as if the plaintiff has sued the municipality itself.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  Thus, the claims stated against Cuma in his official capacity are really claims against the Michigan City Police Department.

<u>Officer Cuma</u>

<u>Collateral Estoppel</u>

Defendants contend that with respect to Cuma and the Michigan City Police Department, Plaintiffs' claims relating to the alleged involuntary confession are barred by collateral estoppel. Specifically, Defendants argue these claims were fully and actually litigated in the trial and appellate courts of the State of Indiana.

Defendants fail to acknowledge applicable Seventh Circuit law which holds that "once a judgment is reversed it ceases to have collateral estoppel effect."  *Salton, Inc. v. Philips Domestic Appliances and Personal Car B.V.*, 391 F.3d 871, 881 (7th Cir. 2004) (citing *Gosnell v. City of Troy, Ill.*, 59 F.3d 654, 657 (7th Cir. 1995) (stating "a remand deprives the judgment of preclusive effect until a new final judgment has been entered.");  *Dodrill v. Ludt*, 764 F.2d 442, 444 (6th Cir. 1985) (reiterating that "the general rule is

that a judgment which is vacated, for whatever reason, is deprived of its conclusive effect as collateral estoppel.")).

In this case, the Supreme Court of Indiana issued an order on March 16, 2001, in which it reversed the denial of post-conviction relief and remanded for a new trial. *Latta*, 743 N.E.2d at 1132. Although the Court based its ruling upon a finding of a conflict of interest from the joint representation, the case law is clear that if a judgment is reversed and remanded for any reason, the entire judgment loses its preclusive effect. *See Universal City Studios, Inc. v. Nintendo Co.*, 578 F. Supp. 911, 919 (S.D.N.Y. 1983) (finding no preclusive effect as to any issues where court of appeals vacated judgment). Therefore, because the Supreme Court of Indiana reversed the denial of post-conviction relief, collateral estoppel is inapplicable.

<u>Statute of Limitations</u>

Defendants argue that Plaintiffs' claims are barred by the statute of limitations as to the claims against Cuma for allegedly: (1) falsifying a police report; (2) falsifying trial testimony; (3) coercing Jacqueline Latta's confession; and (4) ignoring Jacqueline Latta's request for an attorney. Specifically, Defendants claim that Plaintiffs knew or should have known of the alleged violations of their constitutional rights by 1990, but Plaintiffs did not file suit until 2003. In response, Plaintiffs urge that the claims are tolled

by *Heck v. Humphrey*, 512 U.S. 477 (1994).

Both parties agree that Indiana's two-year statute of limitations for personal injury actions applies to claims brought under section 1983. *See Brademas v. Indiana Hous. Fin. Auth.*, 354 F.3d 681, 685 (7th Cir. 2004) ("Claims brought under § 1983 are subject to the statute of limitations for personal injury claims of the state where the alleged injury occurred."); Ind. Code § 34-11-2-4 (providing that an action for injury to person, character, or property must be commenced within two years after the cause of action accrues). The disagreement lies in when the limitations period begins to run.

While state law determines the applicable statute of limitations period, "[f]ederal law determines when a claim accrues. A § 1983 claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Brademas*, 354 F.3d at 685 (quoting *Hondo, Inc. v. Sterling*, 21 F.3d 775, 778 (7th Cir. 1994)); *see also Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993).

Plaintiffs claim that *Heck* tolls the statute of limitations. In *Heck*, the Supreme Court set forth an accrual rule, holding that a damages claim that "would necessarily imply the invalidity of [a] conviction or sentence" may not be brought so long as the conviction stands. *Heck*, 512 U.S. at 487. In pertinent part, the *Heck* Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on

-9-

direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the Plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But, if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id*. at 486-87.

In other words, a plaintiff seeking damages for an allegedly unconstitutional conviction or imprisonment, or for other harms stemming from unlawful actions that would render a conviction or sentence invalid, has no section 1983 cause of action until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus. If a judgment for the plaintiff "would necessarily imply the invalidity of his conviction or sentence," the plaintiff's section 1983 cause of action does not arise, and the statute of limitations does not begin to run, until the plaintiff's conviction has been invalidated. *Id.* at 487. However, if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the

-10-

plaintiff," his section 1983 cause of action arises, and the statute of limitations begins to run, when the plaintiff knew or should have known that his constitutional rights were violated. *Id.* (emphasis in original.)  In *Heck*, the Court stated an example of a section 1983 suit that should be allowed to proceed are suits for damages for allegedly unreasonable searches.  *Id.* at 487 n.7.  Because of doctrines such as independent source, inevitable discovery, and harmless error, such an action, even it successful, would not necessarily imply that the plaintiff's conviction was unlawful.  *Id*.

Plaintiffs baldly assert that their claims against Cuma for falsifying a police report, falsifying trial testimony, coercing Jacqueline Latta's alleged confession, and allegedly ignoring her request for an attorney would all have necessarily implied that the Lattas' convictions were invalid.  However, Plaintiffs provide no case law or authority whatsoever to support their argument that *Heck* precluded Plaintiffs from bringing these claims against Cuma until after their convictions were set aside by the Indiana Supreme Court on March 16, 2001.

Citing to this Court's order on a prior motion to dismiss which briefly discussed *Heck* in a different context, Defendants initially argue that *Heck* is not implicated because this suit cannot be a collateral attack as Plaintiffs' convictions no longer stand.  This argument misses the mark.  If Plaintiffs' claims were barred by *Heck* (because this civil damages claim would have necessarily demonstrated

-11-

an invalidity of their convictions), Plaintiffs would have been barred from bringing such claims within the 2-year statute of limitations, when their convictions were still standing.  The issue is whether, now that their convictions have been set aside, their claims accrued after the convictions were invalidated (in which instance the present claims would be timely), or when Plaintiffs knew or should have known of the violations (in which instance the present claims would be untimely).

In *Gauger v. Hendle*, 349 F.3d 354, 360-61 (7th Cir. 2003), the Seventh Circuit held that a categorical exclusion of all Fourth Amendment claims from *Heck* is not warranted.  To determine whether *Heck* tolls the statute of limitations for the claims asserted by Plaintiffs in this case, the Court must look at each claim.

### Alleged Coerced Confession

Defendants argue that Plaintiffs' claim against Cuma for allegedly coercing Jacqueline Latta's confession is barred by the 2-year statute of limitations.  As noted by Defendants, courts have held that the harmless error doctrine applies to coerced confessions.  *See Arizona v. Fulminante*, 499 U.S. 279, 310-11 (1991).  The Seventh Circuit has previously found that such a claim is not necessarily barred by *Heck*, but subject to the 2-year limitations period.  *See O'Neill v. Burks*, No. 00-3269, 2001 WL 693848, at *1 (7th Cir. June 18, 2001) (finding defendant was required to bring claim of coerced confession immediately because the harmless error analysis is

-12-

applicable, and judgment in favor of defendant on the section 1983 claim would not necessarily invalidate the conviction). Thus, "the limitations period is not automatically tolled in every case when an involuntary confession was used to obtain a conviction." *Howard v. City of Chicago*, No. 03 C 8481, 2004 WL 2397281, at *6 (N.D. Ill. Oct. 25, 2004) (citing *Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996)).

However, some cases have concluded that claims of an involuntary confession do imply the invalidity of a conviction (and therefore toll the limitations period), when the violation yielded a confession that directly led to a conviction. *See, e.g., Johnson v. Village of Riverdale*, 192 F. Supp. 2d 874, 876 (N.D. Ill. 2002). In *Johnson*, the coerced confession was the only evidence implicating plaintiff. *Id.* at 876. Therefore, the *Johnson* court found that the 1983 action contesting the confession, if successful, would necessarily have implied the invalidity of the conviction based solely on that confession. *Id.* Similarly, in *Howard*, the court found that because the defendant's conviction rested almost entirely on his involuntary confession, defendant could not have challenged the defendants' actions of fabricating his confession without necessarily implying the invalidity of his conviction. *Howard*, 2004 WL 2397281, at *7.

On the other hand, if the conviction was not solely based on the allegedly coerced confession, courts have found that actions are not collateral attacks on the conviction, and the claim accrues when the

alleged coercion took place. *See Wiley v. City of Chicago*, 361 F.3d 994, 996-98 (7th Cir. 2004); *Hobley v. Burge*, No. 03 C 3678, 2004 WL 1243929, at *5 (N.D. Ill. June 3, 2004) ("Courts presented with allegations such as torture ordinarily conclude that such claims would have been actionable immediately because success on the claim generally is not incompatible with a subsequent conviction.").

Defendants contend that Plaintiffs' convictions did not rest entirely on Jacqueline Lattas' alleged involuntary confession. Defendants point to other evidence introduced at trial, including: testimony from arson investigators and cause and origin experts who indicated the fire was intentionally set; the chemist's testimony that an accelerant was present in floor samples taken from the Lattas' home; evidence such as the Lattas' residence was locked and there was no sign of forced entry; testimony regarding the irregular burn patterns and bottle of charcoal lighter fluid on the kitchen floor; Jacqueline Latta mistakenly told investigators on the day following the fire that there was a life insurance policy on Brad; and that the Lattas were experiencing severe financial difficulties at the time of the fire. Because the Lattas' convictions were based upon this contributing evidence, the Plaintiffs' alleged coerced confession claim, even if true, would not necessarily imply the invalidity of their convictions.

As such, the claim of an alleged coerced confession was not tolled by *Heck*, but instead accrued when Plaintiffs knew or should

have known of the violations by the trial in 1990.  Because the instant suit was not filed until 2003, more than a decade after the statute of limitations expired, Plaintiffs' claim for damages based upon a coerced confession is time-barred.

<u>Alleged False Trial Testimony</u>

Defendants argue that with regard to Plaintiffs' claim against Cuma for allegedly false trial testimony, the Lattas knew or should have known the testimony was false by the trial in April-May, 1990. The Lattas were present during Cuma's testimony at the suppression hearing and trial.  Additionally, Cuma's testimony related to Jacqueline Latta's statements made during the course of questioning. (Defs.' Ex. EE, Cuma Trial Test., pp. 1817-28.)

With regard to the claim alleging that Cuma gave false testimony at trial, this Court finds that Cuma's trial testimony was not the sole basis for Plaintiffs' convictions.  Even if it were proved that Cuma's testimony was perjurious, the Lattas' convictions would not necessarily have been invalidated.  Furthermore, in *Curtis v. Bembenek*, 48 F.3d 281, 285-87 (7th Cir. 1995), the Seventh Circuit impliedly found a claim alleging a police officer gave perjurious testimony during a preliminary hearing and pretrial suppression hearing was not barred by *Heck*.  *Curtis* was cited with approval in *Alexander v. City of South Bend*, 256 F. Supp. 2d 865, 870 n. 3 (N.D. Ind. 2003), when the Court recognized that the plaintiff was correct

to concede he had no claim for perjured testimony because it was barred by the applicable statute of limitations.  Therefore, this Court finds Plaintiffs' claim that Cuma testified falsely at trial was not tolled, and consequently it is barred by the applicable statute of limitations.

### Alleged Falsifying Of Police Report

Defendants also contend that the allegedly false police report is a claim that is tolled by *Heck* because it was not the sole basis for Plaintiffs' conviction.  Defendants contend that the trial record establishes that Cuma's report was presented to the jury, Cuma testified regarding the contents of the report, and Plaintiffs' counsel was in possession of the report at the time of trial.  (*See* Defs.' Ex. UU, Receipt for Discovery.)

In *Holly v. Boudreau*, No. 04-1899, 2004 WL 1435210, at *1 (7th Cir. June 25, 2004), the Seventh Circuit stated that if an "altered police report coerced [defendant's] guilty plea, that claim is barred by *Heck*."  Such analysis implies that if an altered police report has no bigger significance (as in this case where there is no claim that the police report itself coerced Jacqueline Latta's confession), the claim would not be tolled by *Heck*.  Plaintiffs' claim that Cuma's police report was deficient is therefore barred by the applicable

-16-

statute of limitations.[2]

Right To Counsel

Finally, the parties provided the Court with no argument or authority on whether the alleged violation of a defendant's right to counsel is a claim that is tolled by *Heck*.  Plaintiffs claim Jacqueline Latta's conviction was a result of an involuntary confession that violated her Sixth Amendment right to counsel.  Yet Jacqueline admitted that after the only time she mentioned she wanted an attorney to Cuma, the questioning ended.  (Defs.' Ex. D, J. Latta Dep., pp. 277-78.)

In *Porter v. Bodlovich*, No. 3:94-CV-0889, 1996 WL 535436, at *11 (N.D. Ind. Sept. 17, 1996), the court found that a successful claim for denial of the right to counsel would necessarily render a conviction or sentence invalid.  Therefore, this claim was tolled by *Heck*, and is timely filed by Plaintiffs.

Miranda Warnings

Although timely filed, Plaintiffs' claims for the alleged violation of Jacqueline Latta's right to counsel fail for another

---

[2] Even assuming, *arguendo*, that this claim was timely filed, Plaintiffs have provided no authority to the Court that the preparation of a police report can be violative of Plaintiffs' constitutional rights.  To the contrary, as Defendants have indicated, an incomplete, even slanted police report does not implicate the Constitution.  *See Morales v. Ramirez*, 906 F.2d 784, 790 (1st Cir. 1990).

reason.  Regarding the alleged violation of Jacqueline Latta's rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), Plaintiffs contend that Defendants' alleged failure to give Jacqueline Latta a *Miranda* warning entitles her to relief under section 1983.  In *Thornton v. Buchmann*, 392 F.2d 870, 874 (7th Cir. 1968), the Seventh Circuit held that statements used to incriminate a plaintiff in violation of his or her *Miranda* rights against self-incrimination cannot form the basis for an independent civil claim under section 1983.  "The failure to give *Miranda* warnings would prevent the use of plaintiff's statements in his criminal trial, but plaintiff cannot make a claim for damages on the fact that defendants did not inform him of his *Miranda* rights." *Sapp v. Higgins*, No. 95 C 2612, 1996 WL 26877, at *2 (N.D. Ill. Jan. 22, 1996) (citing *Thornton*, 392 F.2d at 874).

In addressing Plaintiffs' claim that Cuma violated Jacqueline Latta's Sixth Amendment right to counsel, the Court finds Plaintiffs have failed to support this allegation with any evidence.  To the contrary, Jacqueline Latta admitted Cuma stopped asking her questions and the interview was terminated after she requested an attorney. (Defs.' Ex. D, J. Latta Dep., pp. 277-78.)

Thus, Defendants' motion for summary judgment based upon Plaintiffs' claim for civil damages under section 1983 for violation of *Miranda*, and for the alleged violation of Jacqueline Latta's right to counsel, is granted.

Alleged Coerced Confession

This Court has already found that Plaintiffs' claim based upon an alleged coerced confession is barred by the statute of limitations. Even assuming, *arguendo*, that this claim was timely, it would still fail because the Court is skeptical that the statements made to Cuma were a "confession."[3]

Plaintiffs argue in their response to the motion for summary judgment that Cuma "deliberately misconstrued alleged admissions of Jacqueline Latta [that] were simply the product of mistreatment and coercion, nothing else." (Pls.' Mem. of Law in Opp. to Michigan City Defs.' Mot. for Summ. J., p. 40.) Plaintiffs point to two statements Jacqueline Latta made to Cuma: (1) that "she was sorry for what happened. She did not want people to think she was a cold blooded murderer" (Pls.' Ex. 13, Cuma Dep., p. 39); and (2) that she allegedly said "she was, in fact, sorry; she did not want to — want to hurt anyone, nor did she intend on killing her son." (*Id.*, p.

---

[3]In addition, this Court questions whether the claim of an alleged coerced confession by Cuma is even properly before this Court. Plaintiffs' second amended complaint contains no allegation that Cuma coerced a confession from Jacqueline Latta. Rather, the complaint alleges that Cuma interrogated Jacqueline and "falsely reported that the Plaintiff, Jacqueline Latta, had made incriminating statements in order to back up the story of Defendant, Arland Boyd." (Sec. Am. Compl., Count V, ¶ 23.) Although Plaintiffs are probably precluded from clarifying the scope of their complaint during the course of summary judgment proceedings, in the interest of justice, this Court will address Plaintiffs' arguments that Cuma allegedly coerced a confession from Jacqueline Latta.

46.)[4]  Cuma admitted during his deposition that he did not include in his report that Jacqueline Latta directly admitted to him she was involved with the fire.  (*Id.*, p. 47.)

Defendants argue that Jacqueline did not confess to Cuma.  In this case, the Court doubts whether Jacqueline Latta's statements to Cuma that she was sorry for what happened and did not want people to think she was a cold blooded murderer, amount to a "confession."  The term "confession" is defined broadly to include "any self-incriminating statement made or given orally or in writing."  18 U.S.C. § 3501(e).  However, the ambiguous statements made by Jacqueline do not seem to qualify as self-incriminating statements.

The Court need not reach the other arguments made by Defendants regarding the alleged coerced confession.  However, the Court notes that Defendants' arguments that the questioning was not a custodial interrogation, and that Jacqueline Latta was not questioned by Cuma afer she requested an attorney, both may have merit.


Whether Cuma Was Entitled to Absolute Immunity
As A Testifying Witness

This Court has already determined Plaintiffs' claim based upon

_____

[4]It is important to note that prior to Cuma's questioning of Jacqueline Latta, Officer Arland Boyd of the Indiana State Police, who had previously questioned Jacqueline, told Cuma that Jacqueline had admitted to him that she set the fire and killed her son.  (Pls.' Ex. 13, Cuma Dep., p. 22.)  This confession happened during the separate questioning of Boyd, not during Cuma's questioning.

Cuma's alleged false trial testimony is time-barred.  However, it also fails because Cuma is entitled to immunity.  Defendants claim that Cuma is entitled to absolute immunity from any recovery that Plaintiffs seek based upon his trial testimony or suppression hearing testimony.  In response, Plaintiffs claim that this general rule does not apply to Cuma because he was a "complaining witness."

The Supreme Court has held that witnesses at trials are absolutely immune from suits under section 1983 for providing false testimony.  *Briscoe v. LaHue*, 460 U.S. 325, 342-43 (1983).  The rationale behind this general rule is to prevent the harassment of witnesses and to promote unrestrained testimony in criminal cases. *Id.*  This immunity extends to witnesses who commit perjury in pretrial proceedings as well.  *Curtis*, 48 F.3d at 285 (finding police officer was entitled to immunity for providing false testimony in probable cause and suppression hearings).

However, an exception to this immunity that extends to trial and pretrial testimony exists for a "complaining witness."  *Cervantes v. Jones*, 188 F.3d 805, 809 (7th Cir. 1999).  "To qualify as a complaining witness (and thereby be disqualified from absolute immunity), a witness must play a sufficient role in initiating the prosecution."  *Id.* at 810 (citing *White v. Frank*, 855 F.2d 956, 958-59 (2d Cir. 1988)).  A complaining witness is one "who actively instigated or encouraged the prosecution of the plaintiff."  *Id.* (quoting *Curtis*, 48 F.3d at 286).  Moreover, "[i]f police officers

-21-

have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him." *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988).

The inquiry into who qualifies as a complaining witness is highly fact-specific. *See Cervantes*, 188 F.3d at 810; *Ienco v. City of Chicago*, 286 F.3d 994, 1001 n.9 (7th Cir. 2002).  In this case, Plaintiffs claim that Cuma played a significant role in initiating or procuring the prosecution of Plaintiffs because he was involved in the initial investigation and canvassing of Plaintiffs' neighborhood, he was involved in an interrogation of Jacqueline Latta, and the alleged confession was the result of Detective Cuma's written summary that he made post-interrogation.

Defendants respond that Cuma did not initiate the prosecution in this case.  Cuma's last contact with Plaintiffs was on February 16, 1989 (Defs.' Ex. AA, Cuma Dep., pp. 67-68), but the charges and arrests did not occur until May, 1989.  The record is devoid of any consultation or input from Cuma with respect to the decision to charge Plaintiffs.  Rather, the evidence limits Cuma's involvement to a two-hour interview, and a neighborhood canvass.  This Court agrees with Defendants' position that Cuma is entitled to summary judgment on Plaintiffs' allegations that he testified inconsistently with his police report, because he is entitled to absolute immunity.

Cause and Origin Investigation

Defendants argue that because Cuma had no personal involvement with Plaintiffs' claims related to the alleged deficient cause and origin investigation of the fire, and in the collection, analysis, and withholding of evidence, he is entitled to summary judgment on these claims.  Plaintiffs fail to directly address this argument in their response brief, stating that the cause and origin investigation of the Latta house fire is "not directly at issue with respect to the Michigan City Defendants Motion for Summary Judgment."  (Pls.' Mem. of Law in Opp. to Michigan City Defs.' Mot. for Summary J., p. 31.)

To establish section 1983 liability against Cuma in his individual capacity, Plaintiffs must demonstrate that the government official was personally involved in the alleged deprivation at issue.  *See Palmer v. Marion County*, 327 F.3d 588, 593-94 (7th Cir. 2003).  The record is clear that Cuma did not participate in the cause and origin investigation, or the collection of physical evidence, or the determination of the cause and origin of the fire.  Thus, summary judgment in favor of Cuma is warranted on this claim.

Alleged Withholding of Exculpatory Evidence

Plaintiffs allege that Cuma withheld exculpatory evidence, including information from Bert Selby, a neighbor who was interviewed during the canvass, that resulted in a violation of Plaintiffs' constitutional rights.  Defendants point out that during discovery,

Plaintiffs stated they did not know at the present time of any exculpatory evidence Cuma withheld, and these answers to interrogatories were never supplemented.  (Defs.' Ex. N, Pls.' Answers. to Interrogs., pp. 9-10.)  Defendants further argue that even if this claim were properly before this Court, there is simply no evidence that Cuma withheld exculpatory evidence.

Having reviewed the record, the Court agrees with Defendants. Bert Selby was actually called by Plaintiffs as a defense witness, and testified at the trial.  At trial, Selby testified that the substance of his statements to the Michigan City officers during the neighborhood canvass was the same as his trial testimony.  (Ex. to Michigan City Defs.' Reply in Supp. of Summ. J., Selby Crim. Trial Test., pp. 2255-56.)  Plaintiffs have failed to point to exculpatory information withheld by Defendants regarding Selby, and they have failed to show that the withholding of such information would rise to the level of a constitutional violation.  As such, Defendants are entitled to summary judgment on this claim.


Conspiracy

Plaintiffs allege in their second amended complaint that Defendants engaged in a conspiracy to poorly investigate the fire and convict Plaintiffs in order to advance their careers.  (Sec. Am. Compl., Count V, ¶ 26.)  Defendants now argue that Plaintiffs have not produced sufficient evidence that a conspiracy existed, or that Cuma

-24-

was part of a conspiracy.  Plaintiffs provide no argument whatsoever in response.  "Where the party opposing a motion for summary judgment will bear the burden of proof on an issue at trial, he must go beyond the pleadings and affirmatively establish a genuine issue of material fact." *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 173 (7th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

A civil conspiracy requires an agreement between two or more persons to inflict an injury on another.  *Amundsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000).  To state a conspiracy claim under section 1983, a plaintiff must show (1) "an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights," and (2) "actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Neff v. Hmurovich*, 261 F. Supp. 2d 1026, 1045 (S.D. Ind. 2003) (quoting *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988)).  "[A] conspiracy claim cannot survive summary judgment if the allegations are vague, conclusionary, and include no overt acts reasonably related to the promotion of the alleged conspiracy." *Amundsen*, 218 F.3d at 718 (quotation omitted).

Plaintiffs' conspiracy claim against Cuma fails because they have not provided any evidence that Cuma had an agreement with other Defendants to cause such constitutional deprivations.  In fact, there is evidence to the contrary in Plaintiffs' responses to

interrogatories, in which they indicated they did not believe that Cuma was part of a conspiracy. (Defs.' Ex. N, Pls.' Answers to Interrogs. pp. 3-6.)

Additionally, because Plaintiffs have failed to show that they were deprived of any constitutional right, they cannot recover on a conspiracy claim. *See Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000) (citations and quotation omitted) ("there is no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution. . . . The jury's conclusion that [Plaintiffs] suffered no constitutional injury thus forecloses relief on the conspiracy claim."). Summary judgment is therefore properly granted against Plaintiffs on their claim for conspiracy.


Due Process Rights

Plaintiffs maintain that Cuma violated their substantive due process rights by his deliberate indifference or intentional disregard in his investigation of the case, the alleged interrogation of Jacqueline Latta, and Cuma's trial testimony. Defendants disagree, arguing that Plaintiffs have pointed to no conduct by Cuma that shocks the conscience.

To prevail on a substantive due process claim under the Fourteenth Amendment, one must consider whether Cuma's conduct "shocked the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Although Plaintiffs urge the Court to apply the

-26-

less stringent standard of deliberate indifference, this Court agrees with Defendants that the cases cited in Plaintiffs' brief, *Johnson v. Herman*, 132 F. Supp. 2d, 1130, 1139 (N.D. Ind. 2001), and *Armstrong v. Squadrito*, 152 F.3d 564, 576-77 (7th Cir. 1998), are inapplicable because they address prison situations where the courts applied the lower standard because the defendant officers had the ability to make unhurried judgments and had the chance for repeated reflection. The Supreme Court has applied the "shocks the conscience" standard to claims of a coerced confession, *see Chavez v. Martinez*, 538 U.S. 760, 787 (2003), and this Court believes this is the applicable standard here.

Plaintiffs point to two actions in general by Cuma that they claim shock the conscience. First, they claim that Bert Selby, the neighbor Cuma interviewed during the canvass, possessed exculpatory evidence that could have exonerated the Lattas as to their involvement with the fire. (Pls.' Mem. of Law in Opp. to Michigan City Defs.' Mot. for Summ. J., p. 44.) Unfortunately, Plaintiffs do not indicate *what* exculpatory evidence Selby specifically possessed. Plaintiffs also accuse Cuma of ignoring the state of mind of Jacqueline Latta when he conducted the alleged interrogation, when he used the Reid Interrogation Technique when Jacqueline was under the influence of tranquilizers, and when he questioned her less than 48 hours after the death of her only son. (*Id.*) Even taking these allegations as true, the Court does not believe this rises to the level of a course of

conduct that "shocks the conscience."

Equal Protection Clause Rights

Plaintiffs attempt to state a "class of one" equal protection claim under section 1983.  Specifically, they claim Jacqueline Latta was deprived of equal protection because her statement to Cuma was not recorded based upon an illegitimate animus toward Jacqueline (while her husband's statement was recorded).  Plaintiffs allege, without further support, that if the statement had been recorded, "there would not have been a criminal trial and we would not be here today." (Pls.' Mem. of Law in Opp. to Michigan City Defs.' Mot. for Summ. J., p. 57.)  Defendants contend that Plaintiffs have failed to show intentional differential treatment for personal reasons.

The parties agree that a "class of one" equal protection claim requires intentionally differential treatment from others similarly situated for reasons of a personal nature which are unrelated to the duties of the defendant.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Even if an individual has not been singled out because of race or another reason for invidious discrimination, he or she can obtain a remedy under the equal protection clause for "irrational and wholly arbitrary" adverse treatment by the government. *Tuffendsam v. Dearborn County Bd. of Health*, 385 F.3d 1124, 1127 (7th Cir. 2004).

Plaintiffs have provided no argument, facts, or law, supporting

their claim that failing to record Jacqueline's statement was a violation of her equal protection rights.  Aside from Roger Latta, there is no evidence in the record indicating how other people are treated during interviews and whether their interviews or interrogations were recorded.  Furthermore, Plaintiffs have put forth no evidence whatsoever that Cuma deliberately sought to deprive Plaintiffs of their equal protection rights.  In fact, the record shows that the Michigan City Police Department's policy was to record statements at the officer's discretion, and Cuma testified that he deferred to the judgment of more senior detectives.  (Pls.' Ex. AA, Cuma Dep. at 66-67.)  There is simply nothing to link this seemingly innocuous decision not to record Jacqueline Latta's statement to an improper or discriminatory purpose.  Finally, it is pure speculation to insist that Plaintiffs would not have been convicted had Jacqueline's statement been recorded.

For all of these reasons, Plaintiffs cannot show that they were deprived of their equal protection rights.  Cuma is entitled to summary judgment on this issue.

Michigan City Police Department

Whether the Michigan City Police Department
Is a Suable Entity under Section 1983

Defendants contend that the Michigan City Police Department is not a "person" for purposes of section 1983, and cannot be sued in conjunction with municipalities.  In response, Plaintiffs point out

that because the municipality of Michigan City is not a separate named defendant, there is no redundancy, and the Michigan City Police Department may be sued.

It is true that municipal police departments cannot be sued in conjunction with municipalities, because they are merely arms of local municipalities. *Irvin v. Borough of Darby*, 937 F. Supp. 446, 450 (E.D. Pa. 1996). However, the Court agrees with Plaintiffs that because Michigan City has not been named as a defendant, the Michigan City Police Department is a proper party. Moreover, this Court adopts the reasoning set forth in *Smith v. City of Michigan City*, No. S78-253, 1990 WL 610436, at *5 (N.D. Ind. Dec. 7, 1990), which found that:

> In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), the Supreme Court held that municipalities such as Michigan City are amendable to suit as "persons" under § 1983. However, the *Monell* court noted that municipal liability cannot be premised upon a theory of *respondeat superior*, and held that such liability may only be imposed "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [an] injury . . . ." *Id.* at 694.

As such, the Michigan City Police Department is a suable entity under section 1983.

### Whether Plaintiffs Have Established A *Monell* Claim Against Michigan City Police Department

In this case, Defendants argue that the Michigan City Police Department is entitled to summary judgment because Plaintiffs cannot

prove that Cuma acted pursuant to an unconstitutional custom, policy, or practice, as required by *Monell v. Dept. of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978). Plaintiffs claim (1) that the police department failed to properly train its officers, and (2) that it had other official policies, procedures, and customs which deprived Plaintiffs of their Constitutional rights.

When a plaintiff brings suit against a municipality under section 1983, the plaintiff must allege the existence of an unconstitutional policy or custom of the municipality in order to survive summary judgment. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[local] governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights."); *see also Monell*, 436 U.S. at 690-91. A municipality cannot incur liability in an action under section 1983 merely because it employs a tortfeasor. *Monell*, 436 U.S. at 691.

Municipal liability under section 1983 is limited. In *Monell*, the Supreme Court restricted liability to cases in which "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Id.* at 690. A plaintiff seeking to find a municipality liable under section 1983 must also establish a causal nexus between his injury and the municipality's alleged policy or custom. *Id.* at 693-94.

In *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989), the

Supreme Court established that a municipality may, in restricted circumstances, be held liable under section 1983 for constitutional violations resulting from its failure to train police officers. But the circumstances are limited:

> [T]he inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury. . . . To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983.

*Id.* at 388, 391. The Supreme Court elucidated this standard as follows:

> Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality – a "policy" as defined by our prior cases - can a city be liable for such a failure under § 1983. *Monell's* rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible . . . [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id.* at 389-90. In *Cornfield By Lewis v. Consolidated High Sch. Dist.*

*No. 230*, 991 F.2d 1316, 1327 (7th Cir 1992), the Seventh Circuit added that:

> In order to ensure that isolated instances of misconduct are not attributable to a generally adequate policy or training program, we require a high degree of culpability on the part of the policymaker. Coupled with a causation requirement, this standard ensures that the violation alleged is not too far removed from the policy or training challenged as inadequate. Taken together, these two considerations amount to a requirement that liability be based on a finding that the policymakers have actual or constructive notice that a particular omission that is likely to result in constitutional violations.

Plaintiffs have failed to satisfy this rigorous standard in numerous respects.

Plaintiffs argue that the Michigan City Police Department did not have any written rules, regulations, guidelines, customs, or practices which addressed the conduct of officers assisting other agencies as part of the LaPorte County Homicide Unit. (Pls.' Ex. 21, Cuma's Answers to Pls.' Interrogatories, p. 3.) The LaPorte County Homicide Unit was comprised of the LaPorte County Prosecutor and his office, the LaPorte County Sheriff's Department, the LaPorte City Police Department, the Michigan City Police Department, and the Indiana State Police. (Pls.' Ex. 29, Dep. of Phil Shott, p. 29.) The team would be activated by Prosecutor Walter Chapala when there was a suspected homicide. (Pls.' Ex. 11, Dep. of Walter Chapala, p. 38.) Membership on the team was voluntary. (Defs.' Ex. AA, Cuma Dep., p. 11.) The team was responsible for investigating the individual or individuals

-33-

suspected of starting the fire and operated separately from the cause and origin investigation.  (Defs.' Ex. Z, Chapala Dep., p. 68.)

Plaintiffs fault the training of Cuma because he had only been a member of the Homicide Unit for a short time before the fire in question, Cuma did not believe he had any arson investigation training, yet he, along with Lieutenant Sue Yadavia, were sent by the Michigan City Police Department to the Latta house fire.  (Pls.' Ex. 13, Cuma Dep., pp. 7-8, 10-11.)  The only specialized training Cuma had was a two day class he attended in January of 1998 involving general death.  (Pls.' Ex. 20, Cuma's Answers to Pls.' Req. for Produc. of Docs.)  Plaintiffs argue "this lack of any training or organization for its officers . . . reflects the deliberate indifference of the Michigan City Police Department as to the Lattas' constitutional rights. . . ."  (Pls.' Mem. of Law in Opp. to Michigan City Defs.' Mot. for Summ. J., pp. 54-55.)

The Court in *Palmquist v. Selvik*, 111 F.3d 1332, 1345 (7th Cir. 1997), faced a similar argument which was "no special training = deficient training."  There, the Court found "[w]e cannot accept this equation.  To do so would ignore the training the officers did receive."  *Id.*  This Court concurs.  Although there were no specific written policies or training associated with the Homicide Unit, Cuma did have other training associated with his position with the Michigan City Police Department, including basic course of instruction, and attendance of continuing education classes such as an investigative

-34-

officers workshop, and a death investigation course.  (Pls.' Ex. 20, Cuma's Answers to Pls.' Req. for Produc. of Docs.)  Moreover, the Michigan City Police Department contends that Cuma was expected to comply with the codes of conduct, rules and regulations, guidelines, customs and practices of the Michigan City Police Department at all times.  (Pls.' Ex. 22, Michigan City Police Dep't's Answers to Pls.' Interrogs., pp. 3 and 4.)  The evidence shows that Cuma and Lieutenant Yadavia received basic training and continuing education on investigation.  This Court cannot conclude that "the need for enhanced training [was] so obvious, and the inadequacy of training [was] so likely to result in the violation of constitutional rights, that a jury could reasonably attribute to the policymakers a deliberate indifference to those training needs." *Erwin v. County of Manitowoc*, 872 F.2d 1292, 1298 (7th Cir. 1989).

In sum, the evidence is insufficient to establish that the Michigan City Police Department had a constitutionally deficient program of training police officers involved in the Homicide Unit. Even if Defendants were somehow deficient in providing its officers proper police training, Plaintiffs have failed to demonstrate how the alleged failure to provide more specific training had a causal nexus with the claimed injury.  Plaintiffs have not shown how the allegedly deficient training program actually caused the claimed constitutional violation.  *See Erwin*, 872 F.2d at 1298.

Finally, Plaintiffs also seem to assert that the Michigan City

Police Department's rule that a suspect's statement may be recorded at the officer's discretion is improper, or that Cuma failed to follow this policy because he deferred to a senior officer who decided not to record the statement. Plaintiffs have provided no support whatsoever for their claim that recording a statement at the officer's discretion is unconstitutional or shows that the Michigan City Police Department failed to train its police officers in a "relevant respect." *See City of Canton, Ohio*, 489 U.S. at 389. Therefore, this basis for section 1983 liability fails as well.

For all of these reasons, the Court finds that Plaintiffs have not put forth sufficient evidence to support a claim of improper training or an unconstitutional custom, policy, or practice. Therefore, summary judgment is warranted in favor of Defendant, Michigan City Police Department.

CONCLUSION

For the reasons set forth above, Michigan City Defendants' Motion for Summary Judgment [DE #122] is **GRANTED.** The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiffs' claims against Defendants, Jeffrey Cuma and the Michigan City Police Department.

DATED:  October 25, 2005          /s/RUDY LOZANO, Judge
                                  **United States District Court**

-36-