# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

ROGER LATTA and JACQUELINE      )
LATTA,                          )
                                )
Plaintiffs,                     )
                                )
vs.                             )      NO. 2:03-CV-41
                                )
WALTER CHAPALA, et al.,         )
                                )
Defendants.                     )


## ORDER

This matter is before the Court on the LaPorte County Defendants' Motion for Summary Judgment [DE # 143], filed by Defendants, Mike Mollenhauer, Phil Shott, LaPorte County Sheriff's Department, and LaPorte County, Indiana, on May 11, 2005.  For the reasons set forth below, the motion is **GRANTED**.  The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiffs' claims against Defendants, Mike Mollenhauer, Phil Shott, LaPorte County Sheriff's Department, and LaPorte County, Indiana.


BACKGROUND

Three other motions for summary judgment have been filed by various other defendants in this case.  This order analyzes only the motion for summary judgment filed by Defendants, Mike Mollenhauer, Phil Shott, LaPorte County Sheriff's Department, and LaPorte County,

Indiana (hereinafter "Defendants").

Plaintiffs' section 1983 claim stems from a fire that occurred on February 14, 1989, in which their two-year-old son died. This Court assumes the reader's familiarity with the general facts of this case, as set forth in this Court's order dated October 25, 2005, granting the Michigan City Defendants' motion for summary judgment.

Defendant, Mike Mollenhauer, was a Captain at the LaPorte County Sheriff's Department in 1989, during the investigation of the Latta fire. (Mollenhauer Dep., Vol. I, p. 9.) He was a shift commander and also a fire investigator. (*Id.*, p. 10.) Plaintiffs' claim that in the seventeen years of investigating fires for the LaPorte County Sheriff's Department, Mollenhauer only investigated one alleged arson that resulted in a death (the Latta case).

Early during the investigation, Mollenhauer, determined that the case was arson. (*Id.*, pp. 56-57.) During the investigation of the Latta fire, Mollenhauer determined that several holes in the floor of Brad's bedroom were caused by an accelerant. (*Id.*, pp. 33-34.) Mollenhauer also believed he saw abnormal burn patterns and holes in the house that he believed were caused by the use of an accelerant, and that the burn patterns could only have been caused by an accelerant. (*Id.*, pp. 34, 44, 46-47.)

Mollenhauer's fire investigation was reduced to a seven-page report, prepared on February 17, 1989, in which Mollenhauer determined that the case was arson. (Report of Mollenhauer dated February 17,

-2-

1989.)  In that report, Mollenhauer notes he was advised of a prior electrical fire that had occurred in the attic of the Latta's house several months prior, and notes that he discounted the electrical space heater as a potential source of the fire.  (*Id.*)

At the time of the Latta fire, Phil Shott was employed as a LaPorte County Police Officer.  (Shott Dep., p. 6.)  He was also a member of the LaPorte County Homicide Unit.  (*Id.*, pp. 28-29.)  On February 16, 1989, Shott and Officer Yadavia conducted an interview of Jacqueline Latta.  During the course of the interview, Jacqueline Latta told Shott she had taken some tranquilizers prior to coming to the interview.  (*Id.*, p. 95.)  Shott's interview with Jacqueline Latta lasted about one hour and forty-five minutes, and there was nothing inconsistent in her recitation of the events compared to her description given the night of the fire.  (*Id.*, pp. 110-111.)  During the interview, Jacqueline Latta made no admissions that she started the fire, but rather denied that she had set the fire.  (*Id.*, p. 119.)  Nevertheless, Shott believed Jacqueline Latta had set the fire based upon statements Officer Boyd and Cuma told him.  (*Id.*, pp. 121-22.)

In the instant action, Plaintiffs claim that the LaPorte County Defendants violated the Lattas' Fourth, Fifth, Sixth and Fourteenth Amendment rights, including violations of the due process clause, which allegedly deprived the Lattas of their right to receive a fair trial, and that resulted in their wrongful conviction and imprisonment.  (Sec. Am. Compl., Count II, ¶ 33.)  Plaintiffs also

claim that Mollenhauer failed to fully investigate the cause of the fire, and conspired with others for his own political motive. (*Id.*, ¶¶ 22-24.) Further, Plaintiffs allege that Shott conspired with others for his own political and career motives, and that he failed to accurately complete police reports. (*Id.,* ¶¶ 25-27.) With respect to the LaPorte County Sheriff's Department, Plaintiffs claim it failed to enforce practices and policies, and that it provided insufficient training. (*Id.*, ¶ 28.) Finally, Plaintiffs allege that LaPorte County failed to enforce official practices and policies with respect to the LaPorte County Arson Unit and that it ordered and implemented the early destruction of the fire scene. (*Id.*, ¶¶ 29-30.) Having been fully briefed, this motion is ripe for adjudication.

DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). In

-4-

deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also*

*Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.  In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

To state a claim under section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *see also Cunningham v. Southlake Ctr. for Mental Health*, 924 F.2d 106, 107 (7th Cir. 1991).  The preliminary step in any section 1983 claim is to determine which of Plaintiffs' substantive constitutional rights were allegedly violated.  *Spiegel v. Rabinovitz*, 121 F.3d 251, 254 (7th Cir. 1997).

The Court notes Mollenhauer and Shott were sued individually and as officers for the LaPorte County Policy Department.  When individual officers of a police department, such as Mollenhauer and Shott, are sued in their official capacity, the suit is treated as if the plaintiff has sued the municipality itself. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  Thus, the claims stated against

-6-

Mollenhauer and Shott in their official capacities are really claims against the LaPorte County Police Department.

Mollenhauer and Shott

Absolute Immunity

Defendants first argue that Mollenhauer and Shott are immune from liability as testifying witnesses.[1]  Defendants claim any recovery Plaintiffs seek based upon their trial testimony is barred.  In response, Plaintiffs claim Officer Mollenhauer is a "complaining witness" who played a significant role in initiating or procuring the prosecution, and therefore is not immune.  Plaintiffs set forth no argument whatsoever regarding Shott's role in the prosecution or whether he qualifies as a complaining witness.

The Supreme Court has held that witnesses at trials are absolutely immune from suits under section 1983 for providing false testimony.  *Briscoe v. LaHue*, 460 U.S. 325, 342-43 (1983).  The rationale behind this general rule is to prevent the harassment of witnesses and to promote unrestrained testimony in criminal cases. *Id.*

However, an exception to this immunity that extends to trial and pretrial testimony exists for a "complaining witness." *Cervantes v.*

---

[1]Defendants also claim that Mollenhauer is entitled to immunity for all of his activities in connection with the Latta case because he is an expert witness.  However, because Defendants did not establish that Mollenhauer was qualified as an expert, the Court finds this argument unpersuasive.

-7-

*Jones*, 188 F.3d 805, 809 (7th Cir. 1999).  "To qualify as a complaining witness (and thereby be disqualified from absolute immunity), a witness must play a sufficient role in initiating the prosecution." *Id.* at 810 (citing *White v. Frank*, 855 F.2d 956, 958-59 (2d Cir. 1988)).  A complaining witness is one "who actively instigated or encouraged the prosecution of the plaintiff." *Id.* (quoting *Curtis*, 48 F.3d at 286).  Moreover, "[i]f police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him." *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988). This immunity from liability covers the testimony on behalf of the prosecution, but it also provides immunity from civil liability that a witness conspired with the prosecutor to commit perjury. *House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992).

The inquiry into who qualifies as a complaining witness is highly fact-specific.  *See Cervantes*, 188 F.3d at 810; *Ienco v. City of Chicago*, 286 F.3d 994, 1001 n.9 (7th Cir. 2002).  In this case, Plaintiffs claim that Mollenhauer and his testimony played a significant role in initiating or procuring the Lattas prosecution. Plaintiffs contend it was Mollenhauer who declared the case to be arson within hours of commencing his fire investigation, he ignored potential accidental causes of the fire, and his unreliable findings pushed the case towards prosecution.  Defendants contend that although

Mollenhauer was involved in the arson investigation and testified against Plaintiffs at trial, they have failed to show that Mollenhauer had any direct connection to the prosecution.

This Court finds that, based upon the record, there is no evidence that either Mollenhauer or Shott actively instigated or encouraged the prosecution of Plaintiffs.  Therefore, Mollenhauer and Shott are entitled to summary judgment on Plaintiffs' claims based upon their trial testimony and conspiring with the prosecutor to commit perjury.

### Shott's Interrogation of Jacqueline Latta

Defendants argue that Shott is entitled to summary judgment on all claims arising from his interrogation of Jacqueline Latta because he never deprived her of a constitutional right.  In response, Plaintiffs make no legal argument that Shott violated Jacqueline Latta's rights during the interrogation. Rather, they criticize Shott because "[d]espite the lack of evidence in all regards, Shott stated that there was never a point during the investigation through the prosecution that he ever believed that Jacqueline Latta was innocent of setting the fire."  (Pls.' Mem. of Law in Opp. to LaPorte County Defs.' Mot. for Summ. J., p. 22.)  As noted by Defendants, Plaintiffs have pointed to no authority, and the Court is unaware of any, to support the proposition that holding an opinion during an investigation is actionable under section 1983.

To establish section 1983 liability against Shott in his individual capacity, Plaintiffs must demonstrate that Shott was personally involved in the alleged deprivation at issue. *See Palmer v. Marion County*, 327 F.3d 588, 593-94 (7th Cir. 2003). In reviewing the facts underlying Shott's interrogation of Jacqueline Latta, this Court has found nothing improper, much less actionable, under section 1983. Jacqueline Latta admits that she was provided her *Miranda* rights. (J. Latta Dep., pp. 177-78.) She also concedes she was not threatened in any way, and that Shott's demeanor "seemed pleasant." (*Id.*, p. 176.) Jacqueline testified during her deposition that Shott read her the waiver of her rights several times, and when she signed the waiver, she did not feel she needed counsel. (*Id.*, pp. 177-80.) By Plaintiffs' own concession, at no time during Shott's interview did Jacqueline Latta make any admissions that she had started the fire. Rather, Jacqueline Latta denied setting the fire during the interrogation with Shott. (Shott Dep., p. 119.) Upon review of the record, it is clear that Jacqueline Latta's statements to Shott were voluntary and not coerced. As such, Plaintiffs have failed to establish that Shott's interrogation violated any constitutional rights, and Shott is entitled to summary judgment on this claim.

Alleged Inaccurate Police Report

With respect to Plaintiffs' allegations that Mollenhauer or Shott violated their constitutional rights by drafting incomplete or

-10-

inaccurate police reports, Defendants claim that, even taken as true, such claims do not rise to the level of violating Plaintiffs' constitutional rights.  This Court agrees.

An incomplete police report does not implicate the Constitution. *See Morales v. Ramirez*, 906 F.2d 784, 789 (1st Cir. 1990) ("[Plaintiff] has shown that the material proffered was incomplete and compiled with a view towards placing her in a poor light; that defendants drew (and encouraged others to draw) erroneous conclusions from it . . . in constitutional terms, that was not enough."). Although the *Morales* court noted there may conceivably be cases where the withholding of information or its misleading arrangement is so egregious to "work a deprivation of constitutional dimension," there is nothing about Defendants' alleged inaccurate police reports that implicate due process concerns.  *Id.*  Morever, drafting a report in such a way that slants an investigation and that leads to an arrest also does not violate the Constitution.  *See Barnier v. Szentmiklosi*, 810 F.2d 594, 599 (6th Cir. 1987) (finding no constitutional cause of action under section 1983 where defendants filed an allegedly misleading police report resulting in criminal complaints being filed against the plaintiff).

<u>Alleged Incomplete and Defective Investigation</u>

In addressing Mollenhauer's investigation, Defendants argue the Plaintiffs' contention that the investigation was incomplete and

defective does not rise to a violation of section 1983.  Defendants cite *Alexander v. City of South Bend*, 320 F. Supp. 2d 761 (N.D. Ind. 2004), *Hensley v. Carey*, 818 F.2d 647 (7th Cir. 1987), and *Hutsell v. Sayre*, 5 F.3d 996 (6th Cir. 1993), for the proposition that violation of a prophylactic rule (such as that prohibiting unduly suggestive lineups) is not extreme enough to be actionable under section 1983. Plaintiffs do not address the case law cited by Defendants.

The Court agrees that even taking all of Plaintiffs' allegations as true, and assuming that Mollenhauer's investigation was incomplete or defective, or that he rushed to judgment, these facts do not rise to the level of a constitutional violation of Plaintiffs' right to a fair trial.  "[I]t is not the duty of the police to perform the perfect investigation, and one suspected of committing a crime has no constitutional right to an investigation by police which will uncover all exculpatory evidence." *Nugent v. Hayes*, 88 F. Supp. 2d 862, 868 (N.D. Ill. 2000) (quoting *Davis v. Owens*, 973 F.2d 574, 577 (7th Cir. 1992)).  In fact, "once police officers have discovered sufficient facts to establish probable cause, they have no constitutional obligation to conduct any further investigation in hopes to conduct any further investigation in hopes of uncovering potentially exculpatory evidence." *Id.*


Collateral Estoppel

Defendants argue that Plaintiffs' claims against Defendants are

-12-

barred by the doctrine of collateral estoppel because the issues associated with Shott's interrogation of Jacqueline Latta, Mollenhauer's investigation of the cause and origin of the fire, and the alleged conspiracy to wrongfully convict Plaintiffs, were all litigated and ruled upon in the trial and appellate courts of the State of Indiana.

Defendants fail to acknowledge applicable Seventh Circuit law which holds that "once a judgment is reversed it ceases to have collateral estoppel effect." *Salton, Inc. v. Philips Domestic Appliances and Personal Car B.V.*, 391 F.3d 871, 881 (7th Cir. 2004) (citing *Gosnell v. City of Troy, Ill.*, 59 F.3d 654, 657 (7th Cir. 1995) (stating "a remand deprives the judgment of preclusive effect until a new final judgment has been entered."); *Dodrill v. Ludt*, 764 F.2d 442, 444 (6th Cir. 1985) (reiterating that "the general rule is that a judgment which is vacated, for whatever reason, is deprived of its conclusive effect as collateral estoppel.")).

In this case, the Supreme Court of Indiana issued an order on March 16, 2001, in which it reversed the denial of post-conviction relief and remanded for a new trial. *Latta*, 743 N.E.2d at 1132. Although the Court based its ruling upon a finding of a conflict of interest from the joint representation, the case law is clear that if a judgment is reversed and remanded for any reason, the entire judgment loses its preclusive effect. *See Universal City Studios, Inc. v. Nintendo Co.*, 578 F. Supp. 911, 919 (S.D.N.Y. 1983) (finding

-13-

no preclusive effect as to any issues where court of appeals vacated judgment). Therefore, because the Supreme Court of Indiana reversed the denial of post-conviction relief, collateral estoppel is inapplicable.

### Statute of Limitations

Defendants contend that Plaintiffs' claims relating to the voluntariness of Jacqueline Latta's testimony and Mollenhauer's investigation are barred by the statute of limitations. In response, Plaintiffs urge that they did not know about Defendants' conspiracy to wrongfully convict the Lattas until discovery took place in this case. Plaintiffs also assert that the statute of limitations was tolled by *Heck v. Humphrey*, 512 U.S. 477 (1994). The Court notes that Plaintiffs do not directly address Defendants' arguments regarding Jacqueline Latta's interrogation or Mollenhauer's investigation.

Indiana's two-year statute of limitations for personal injury actions applies to claims brought under section 1983. *See Brademas v. Indiana Hous. Fin. Auth.*, 354 F.3d 681, 685 (7th Cir. 2004) ("Claims brought under § 1983 are subject to the statute of limitations for personal injury claims of the state where the alleged injury occurred."); Ind. Code § 34-11-2-4 (providing that an action for injury to person, character, or property must be commenced within two years after the cause of action accrues). The issue here is when the limitations period began to run.

-14-

While state law determines the applicable statute of limitations period, "[f]ederal law determines when a claim accrues. A § 1983 claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Brademas*, 354 F.3d at 685 (quoting *Hondo, Inc. v. Sterling*, 21 F.3d 775, 778 (7th Cir. 1994)); *see also Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993).

Plaintiffs claim that *Heck* tolls the statute of limitations. In *Heck*, the Supreme Court set forth an accrual rule, holding that a damages claim that "would necessarily imply the invalidity of [a] conviction or sentence" may not be brought so long as the conviction stands. *Heck*, 512 U.S. at 487. In pertinent part, the *Heck* Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the Plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But, if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the

-15-

absence of some other bar to the suit.

*Id.* at 486-87.

In other words, a plaintiff seeking damages for an allegedly unconstitutional conviction or imprisonment, or for other harms stemming from unlawful actions that would render a conviction or sentence invalid, has no section 1983 cause of action until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.  If a judgment for the plaintiff "would necessarily imply the invalidity of his conviction or sentence," the plaintiff's section 1983 cause of action does not arise, and the statute of limitations does not begin to run, until the plaintiff's conviction has been invalidated.  *Id.* at 487.  However, if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff," his section 1983 cause of action arises, and the statute of limitations begins to run, when the plaintiff knew or should have known that his constitutional rights were violated.  *Id.* (emphasis in original.)  In *Heck*, the Court stated an example of a section 1983 suit that should be allowed to proceed are suits for damages for allegedly unreasonable searches.  *Id.* at 487 n.7.  Because of doctrines such as independent source, inevitable discovery, and harmless error, such an action, even it successful, would not necessarily imply that the plaintiff's conviction was unlawful.  *Id.*

Defendants argue that *Heck* is not implicated because this suit

-16-

cannot be a collateral attack as Plaintiffs' convictions no longer stand. This argument misses the mark. If Plaintiffs' claims were barred by *Heck* (because this civil damages claim would have necessarily demonstrated an invalidity of their convictions), Plaintiffs would have been barred from bringing such claims within the 2-year statute of limitations, when their convictions were still standing. The issue is whether, now that their convictions have been set aside, their claims accrued after the convictions were invalidated, or when Plaintiffs knew or should have known of the violations. In *Gauger v. Hendle*, 349 F.3d 354, 360-61 (7th Cir. 2003), the Seventh Circuit held that a categorical exclusion of all Fourth Amendment claims from *Heck* is not warranted. To determine whether *Heck* tolls the statute of limitations, the Court will look at each claim that Defendants assert is time-barred.[2]

<u>Voluntariness of Jacqueline Latta's Statements</u>

This Court has already determined that Plaintiffs' claim relating to the alleged involuntary statement Jacqueline Latta made to Shott

---

[2]This Court notes that in its October 25, 2005 order granting summary judgment for the Michigan City Defendants, those defendants argued and the Court found that claims regarding an alleged coerced confession, alleged false trial testimony, and an alleged falsified police report were barred by the statute of limitations and not tolled by *Heck*. Defendants in this case have put forth different arguments, and the Court will confine itself to ruling on only those issues presented by these parties (even though other arguments such as those set forth in the Michigan City Defendants' motion for summary judgment may have been meritorious here as well).

fails on the merits.  However, it is also time-barred.

Defendants argue that Plaintiffs' claim regarding the voluntariness of Jacqueline Latta's statements is barred by the 2-year statute of limitations.  As noted by Defendants, courts have held that the harmless error doctrine applies to coerced confessions.  *See Arizona v. Fulminante*, 499 U.S. 279, 310-11 (1991).  The Seventh Circuit has previously found that such a claim is not necessarily barred by *Heck*, but subject to the 2-year limitations period.  *See O'Neill v. Burks*, No. 00-3269, 2001 WL 693848, at *1 (7th Cir. June 18, 2001) (finding defendant was required to bring claim of coerced confession immediately because the harmless error analysis is applicable, and judgment in favor of defendant on the section 1983 claim would not necessarily invalidate the conviction).  Thus, "the limitations period is not automatically tolled in every case when an involuntary confession was used to obtain a conviction."  *Howard v. City of Chicago*, No. 03 C 8481, 2004 WL 2397281, at *6 (N.D. Ill. Oct. 25, 2004) (citing *Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996)).

However, some cases have concluded that claims of an involuntary confession do imply the invalidity of a conviction (and therefore toll the limitations period), when the violation yielded a confession that directly led to a conviction.  *See, e.g., Johnson v. Village of Riverdale*, 192 F. Supp. 2d 874, 876 (N.D. Ill. 2002).  In *Johnson*, the coerced confession was the only evidence implicating plaintiff.  *Id.*

-18-

at 876.   Therefore, the *Johnson* court found that the 1983 action contesting the confession, if successful, would necessarily have implied the invalidity of the conviction based solely on that confession.  *Id.*   Similarly, in *Howard*, the court found that because the defendant's conviction rested almost entirely on his involuntary confession, defendant could not have challenged the defendants' actions of fabricating his confession without necessarily implying the invalidity of his conviction.   *Howard*, 2004 WL 2397281, at *7.

On the other hand, if the conviction was not solely based on the allegedly coerced confession, courts have found that actions are not collateral attacks on the conviction, and the claim accrues when the alleged coercion took place.   *See Wiley v. City of Chicago*, 361 F.3d 994, 996-98 (7th Cir. 2004); *Hobley v. Burge*, No. 03 C 3678, 2004 WL 1243929, at *5 (N.D. Ill. June 3, 2004) ("[C]ourts presented with allegations such as torture ordinarily conclude that such claims would have been actionable immediately because success on the claim generally is not incompatible with a subsequent conviction.").

Here, Jacqueline Latta's statement to Shott cannot be deemed a "confession" because, admittedly, when she talked to Shott, she denied she set the fire.   Clearly, Plaintiffs' convictions did not rest entirely on Jacqueline Latta's statements to Shott.   Other evidence was introduced at trial, and because the Lattas' convictions were based upon this other evidence, the Plaintiffs' complaint about the voluntariness of her statements to Shott, even if true, would not

-19-

necessarily imply the invalidity of their convictions.

As such, the claim of an alleged involuntary statement was not tolled by *Heck*, but instead accrued when Plaintiffs knew or should have known of the violations by the trial in 1990.  Because the instant suit was not filed until 2003, more than a decade after the statute of limitations expired, Plaintiffs' claim for damages based upon an involuntary statement is time-barred.

Mollenhauer's Investigation

Defendants also contend that with respect to Mollenhauer's investigation of the fire scene, Plaintiffs knew or should have known about any issues related to the investigation, his qualifications, and the completeness of the report before, and during the trial in 1990. In response, Plaintiffs state that while they may have had suspicions about certain aspects of the investigation, they were unaware of any facts that could be established until discovery was undertaken in this case.  Plaintiffs contend that the fraudulent concealment tolls the statute of limitations.

In *Heck*, a state prisoner brought an action for damages pursuant to section 1983, challenging the conduct of state officials who allegedly had unconstitutionally caused his conviction by improperly investigating his crime and destroying evidence.  512 U.S. at 478-79. Of course, in *Heck*, the Supreme Court found that the damages claim did challenge the legality of the conviction.  In this case, Defendants

fail to cite any case law or authority whatsoever to establish that challenging this investigation would not necessarily challenge the legality of Plaintiffs' convictions.   Therefore, this Court finds that, as in *Heck*, Plaintiffs' challenge to the investigation of their case constitutes a challenge to the legality of their conviction.   As such, these claims were tolled by *Heck*.

In their reply memorandum, Defendants argue that Plaintiffs' claims actually started accruing on June 24, 2000, when their conviction was reversed on direct appeal, and not on August 23, 2003, when the prosecutor dismissed the charges against Plaintiffs. Therefore, Defendants contend that even with *Heck*'s tolling, Plaintiffs claims are tardy.   Defendants provide the Court with no authority whatsoever in support of this argument, and the Court will not conduct research for the parties.   This Court will not develop the parties' arguments for them.   *Tyler v. Runyon*, 70 F.3d 458, 464-65 Cir. 1995) (recognizing that courts need not and indeed should not expend limited judicial resources in researching, refining, and otherwise fleshing out arguments the parties themselves do not adequately support); *Hershinow v. Bonamarte*, 735 F.2d 264, 266 (7th Cir. 1984) (refusing to consider an argument that was briefed in a "perfunctory and undeveloped[] manner"); *Weissman v. Weener*, 12 F.3d 84, 86 (7th Cir. 1993) ("[J]udges should be hesitant to wander too far astray - in their search for the correct legal result - in arguments presented to them by the parties.   When judges do so, one consequence

is to 'diminish the responsibility of lawyers and reduce competition among them.'" (citation omitted). Even assuming that Plaintiffs' claims relating to the alleged defective investigation were timely filed, as determined earlier by the Court, the claim fails on the merits because it does not rise to the level of a constitutional violation under section 1983.

Conspiracy

Plaintiffs allege in their second amended complaint that Defendants Mollenhauer, Shott, the LaPorte County Sheriff's Department, and LaPorte County, all intentionally conspired to wrongfully convict and imprison Plaintiffs to further their political careers. (Sec. Am. Compl., Count II, ¶¶ 23, 26, 31.) Defendants argue that Plaintiffs have not produced sufficient evidence that a conspiracy existed, or that Mollenhauer or Shott were part of a conspiracy. Plaintiffs have set forth no objective evidence tending to show that a conspiracy existed. "Where the party opposing a motion for summary judgment will bear the burden of proof on an issue at trial, he must go beyond the pleadings and affirmatively establish a genuine issue of material fact." *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 173 (7th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

A civil conspiracy requires an agreement between two or more persons to inflict an injury on another. *Amundsen v. Chicago Park*

-22-

*Dist.*, 218 F.3d 712, 718 (7th Cir. 2000).  To state a conspiracy claim under section 1983, a plaintiff must show (1) "an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights," and (2) "actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Neff v. Hmurovich*, 261 F. Supp. 2d 1026, 1045 (S.D. Ind. 2003) (quoting *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988)).  "[A] conspiracy claim cannot survive summary judgment if the allegations are vague, conclusionary, and include no overt acts reasonably related to the promotion of the alleged conspiracy." *Amundsen*, 218 F.3d at 718 (quotation omitted).  Plaintiffs' conspiracy claim against these Defendants fails because they have not provided any evidence that anyone had an agreement with other defendants to cause such alleged constitutional deprivations.

Additionally, because Plaintiffs have failed to show that they were deprived of any constitutional right, they cannot recover on a conspiracy claim.  *See Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000) (citations and quotation omitted) ("there is no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution. . . . The jury's conclusion that [Plaintiffs] suffered no constitutional injury thus forecloses relief on the conspiracy claim.").  Summary judgment is therefore properly granted against Plaintiffs on their claim for conspiracy.

Due Process Rights

Plaintiffs maintain that Defendants violated their substantive due process rights by their failure to summon the Arson Unit to investigate the case, Mollenhauer's deliberate indifference during the investigation and failure to consider causes other than the accelerant, and suppression of exculpatory evidence. Defendants disagree, arguing that Plaintiffs' claims amount to no more than so-called negligent acts and are insufficient to establish a violation of due process.

To prevail on a substantive due process claim under the Fourteenth Amendment, one must consider whether Mollenhauer or Shott's conduct "shocked the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).  Although Plaintiffs urge the Court to apply the less stringent standard of deliberate indifference, the cases cited in Plaintiffs' brief, *Johnson v. Herman*, 132 F. Supp. 2d, 1130, 1139 (N.D. Ind. 2001), and *Armstrong v. Squadrito*, 152 F.3d 564, 576-77 (7th Cir. 1998), are inapplicable.  Those cases address prison situations where the courts applied the lower standard because the defendant officers had the ability to make unhurried judgments and had the chance for repeated reflection.  The Supreme Court has applied the "shocks the conscience" standard, *see Chavez v. Martinez*, 538 U.S. 760, 787 (2003), and this Court believes this is the applicable standard here.

The Court has reviewed the record and analyzed the role of these

-24-

Defendants during the investigation at issue.  Even taking Plaintiffs' allegations as true, the Court does not believe the actions rise to the level of a course of conduct that "shocks the conscience."


LaPorte County and LaPorte County Sheriff's Department

### Whether LaPorte County Sheriff's Department Is a Suable Entity Under Section 1983

Defendants contend that the LaPorte County Sheriff's Department is immune from liability under section 1983 because it cannot be sued in conjunction with LaPorte County, a municipality.  Plaintiffs do not directly respond to this argument.

It is true that municipal police departments cannot be sued in conjunction with municipalities, because they are merely arms of local municipalities.  *Irvin v. Borough of Darby*, 937 F. Supp. 446, 450 (E.D. Pa. 1996); *see also West v. Waymire*, 114 F.3d 646, 646-47 (7th Cir. 1997) (finding the naming of a town's police department in a 1983 suit adds nothing because it is "not a suable entity separate from the [t]own.").  Here, the LaPorte County Sheriff's Department cannot be sued in conjunction with LaPorte County, because it is merely an arm of LaPorte County.  Consequently, the LaPorte County Sheriff's Department is entitled to summary judgment on Plaintiffs' claims.

### Whether Plaintiffs Have Established A *Monell* Claim Against LaPorte County

In this case, Defendants argue that LaPorte County is entitled to summary judgment because Plaintiffs cannot prove any

-25-

unconstitutional customs, policies, or practices, as required by *Monell v. Dept. of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978). Plaintiffs claim the Sheriff's Department failed to properly train its officers, that the County protocol was violated when the Arson Unit was not called to the scene, and that a violation occurred when Jacqueline Latta's interview was not recorded.

When a plaintiff brings suit against a municipality under section 1983, the plaintiff must allege the existence of an unconstitutional policy or custom of the municipality in order to survive summary judgment. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[local] governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights."); *see also Monell*, 436 U.S. at 690-91. A municipality cannot incur liability in an action under section 1983 merely because it employs a tortfeasor. *Monell*, 436 U.S. at 691.

Municipal liability under section 1983 is limited.  In *Monell*, the Supreme Court restricted liability to cases in which "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Id.* at 690.  A plaintiff seeking to find a municipality liable under section 1983 must also establish a causal nexus between his injury and the municipality's alleged policy or custom. *Id.* at 693-94.

In *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989), the

-26-

Supreme Court established that a municipality may, in restricted circumstances, be held liable under section 1983 for constitutional violations resulting from its failure to train police officers.  But the circumstances are limited:

> [T]he inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury. . . . To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983.

*Id.* at 388, 391.  The Supreme Court elucidated this standard as follows:

> Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality – a "policy" as defined by our prior cases - can a city be liable for such a failure under § 1983.  *Monell's* rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible . . . [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.  In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id.* at 389-90.  In *Cornfield By Lewis v. Consolidated High Sch. Dist.*

-27-

*No. 230*, 991 F.2d 1316, 1327 (7th Cir 1992), the Seventh Circuit added that:

> In order to ensure that isolated instances of misconduct are not attributable to a generally adequate policy or training program, we require a high degree of culpability on the part of the policymaker. Coupled with a causation requirement, this standard ensures that the violation alleged is not too far removed from the policy or training challenged as inadequate. Taken together, these two considerations amount to a requirement that liability be based on a finding that the policymakers have actual or constructive notice that a particular omission that is likely to result in constitutional violations.

Plaintiffs have failed to satisfy this rigorous standard in numerous respects.

Although Plaintiffs criticize the qualifications of Mollenhauer, over the years of his service, Mollenhauer did attend training seminars, he worked with different fire marshals who provided him on-the-job training, and he received training from Barker and Herbert Labs.  (Mollenhauer Dep., pp. 10-12.)   The evidence shows that Mollenhauer had basic training and underwent continuing education on fire investigation.  Based upon the record, the Court cannot conclude that "the need for enhanced training [was] so obvious, and the inadequacy of training [was] so likely to result in the violation of constitutional rights, that a jury could reasonably attribute to the policymakers a deliberate indifference to those training needs." *Erwin v. County of Manitowoc*, 872 F.2d 1292, 1298 (7th Cir. 1989).

Although Plaintiffs claim the Sheriff's Department violated

-28-

protocol when it failed to call in the LaPorte County Arson Unit, and when it failed to record Jacqueline Latta's statement made to Shott, Plaintiffs have failed to demonstrate how the alleged failures to follow policy had a causal nexus with the claimed injury. *See Erwin*, 872 F.2d at 1298.   Plaintiffs have provided no support whatsoever for their claim that not recording an interview is unconstitutional, nor have they shown how the failure to record the statement caused the claimed constitutional violation.   Because Plaintiffs admit that no self-incriminating statements were made during that interview or interrogation by Shott, the Court does not understand how the failure to record the session could have caused the claimed unfair trial. Similarly, Plaintiffs have failed to show how the failure to call in the Arson Unit, which was a newly established unit, caused the claimed constitutional violation.

For all of these reasons, the Court finds that Plaintiffs have not put forth sufficient evidence to support a claim of improper training or an unconstitutional custom, policy, or practice. Therefore, summary judgment is warranted in favor of Defendant, LaPorte County.


CONCLUSION

For the reasons set forth above, the LaPorte County Defendants' Motion for Summary Judgment [DE # 143], filed by Defendants, Mike Mollenhauer, Phil Shott, LaPorte County Sheriff's Department, and

LaPorte County, Indiana, is **GRANTED**.  The Clerk is **ORDERED TO DISMISS WITH PREJUDICE** Plaintiffs' claims against Defendants, Mike Mollenhauer, Phil Shott, LaPorte County Sheriff's Department, and LaPorte County, Indiana.


**DATED:  October 25, 2005**        **/s/RUDY LOZANO, Judge**
                                    **United States District Court**