## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| ROGER LATTA and JACQUELINE LATTA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | NO. 2:03-CV-41 |
| WALTER CHAPALA, et al., | ) ) | |
| Defendants. | ) | |

## ORDER

This matter is before the Court on the Motion for Summary Judgment of Defendants, John Walker, Craig Balliet, Margaret Balliet, and Barker & Herbert Analytical Laboratories, Inc. (the "Barker & Herbert Defendants") [DE #135], filed by the Barker & Herbert Defendants on May 2, 2005. For the reasons set forth below, the motion is **GRANTED**. The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiffs' claims against Defendants, John Walker, Craig Balliet, Margaret Balliet, and Barker & Herbert Analytical Laboratories, Inc.


BACKGROUND

Motions for summary judgment have been filed by three other groups of defendants in this case. This order solely analyzes the instant motion for summary judgment filed by the Barker & Herbert Defendants. Plaintiffs' section 1983 action arises from a fire that

occurred on February 14, 1989, in which their two-year-old son died. This Court assumes the reader's familiarity with the general facts of this case, as set forth in this Court's order dated October 25, 2005, granting the Michigan City Defendants' motion for summary judgment.

Defendants John Walker, Craig Balliet and Margaret Balliet, were employees for Barker & Herbert Analytical Laboratories, Inc. ("Barker & Herbert").  (Sec. Am. Compl., Count VI, ¶ 20.)  On February 16, 1989, Barker & Herbert received a request from Auto Owners' Insurance Company to conduct an investigation into the fire which occurred at the Latta's house.  (Walker Dep., pp. 78-79.)  Walker, a cause and origin investigator for Barker & Herbert, went to the scene on February 22, 1989.  (*Id.*, p. 85.)  At the end of his investigation, Walker issued a report to Auto Owners' Insurance Company, concluding that the fire was the result of a deliberate attempt to burn the home, and the cause was arson.  (*Id.*, p. 26; Pls.' Ex. 14, John Walker's April 19, 1989 Fire and Causation Analysis Report.)  Walker testified that he had no reason to slant or divert his findings in the Latta case.  (*Id.*, p. 221.)

It is uncontested that Walker made no determination of who set the fire at the Latta house.  (*Id.*, p. 226.)  Walker testified that he was never asked to conceal, withhold or ignore evidence which would indicate that the fire was not intentionally set, and he did not conceal any such evidence.  (*Id.*, pp. 225-26.)

Prior to the Latta case, Walker had taught a two week arson

-2-

investigation class for the local law enforcement agencies and fire departments.  (Chapala Dep., pp. 86-87.)  Walter Chapala testified that Walker taught people from the State Fire Marshall, the Indiana State Police, and his prosecutor's office.  (Chapala Dep., p. 88.)

Plaintiffs claim that Barker & Herbert did not function as an independent laboratory during the investigation, but rather as an arm of the state.  According to the record, a Barker & Herbert report was provided to the LaPorte County Police Department on March 19, 1989, pertaining to a sample from the fire scene.  (Pls.' Ex. 10, Testing report of Barker & Herbert dated March 10, 1989.)  Additionally, an invoice was issued from Barker & Herbert to the LaPorte County Police Department for laboratory services on the Latta case for the amount of $825.  (Pls.' Ex. 6.)  Craig Balliet and John Walker were witnesses for the prosecution at the Latta trial.  Additionally, Walker prepared a report for Deputy Prosecutor Scott Duerring, attempting to critique the opinions of Plaintiffs' expert, Gerry Mang.  (*See* Pls.' Ex. 12, Report of November 6, 1989 by John Walker to Scott Duerring.)

Craig Balliet and Margaret Balliet are chemists employed by Barker & Herbert, who participated in performing the analysis of certain samples taken at the Latta home and provided to Barker & Herbert by the LaPorte County Sheriff's Department and by Walker.  (C. Balliet Dep., pp. 34-36.)  Officer Devereaux of the LaPorte County Sheriff's Office submitted samples to Barker & Herbert for analysis, and Craig Balliet sent a letter to Devereaux with the results of the

-3-

testing Barker & Herbert conducted.   (C. Balliet Dep., pp. 34-38.)

On approximately December 18, 1989, the Clerk of the LaPorte Circuit Court issued a subpoena duces tecum to Barker & Herbert requesting the following:

(1)   List of all samples run, dates and times samples were run, all blanks run, and the results and readings of all samples.

(2)   Statement as to the procedures for the preparation of each sample, reference head space, purging and trapping.

(3)   The make, model, manufacture, serial number, maintenance and repair record of the instrument used.

(4)   The type of column used, manufacturer, length of the column, and the kind of detection type used.

(5)   Identify the carrier gas used, rate of flow, program rate, injection temperature, oven temperature and hold time for each sample tested, control and standard.

(6)   Are the samples available to have additional testing performed in another laboratory?

(C. Balliet Dep. I, Ex. 9.)  Although Plaintiffs fault Craig Balliet for not turning over the actual chromatograms created by Barker & Herbert[1], the plain text of the subpoena shows that no such actual

---

[1]Plaintiffs argue that the subpoena requested, among other things, "the actual chromatograms and comparison samples from the testing of the fire debris samples taken from the Latta residence."  (Pls.' Mem. of Law in Opp. to Barker & Herbert Defs.' Mot. for Summ. J., p. 13.)

tests were requested.  Craig Balliet forwarded his written response to the subpoena and subsequently, on February 23, 1990, Balliet sent copies of the chromatograms to Duerring.[2]  (C. Balliet Dep. I, p. 69; Ex. 12, p. 84, Ex. 8.)    Margaret Balliet was not personally involved in responding to the subpoena, and did not believe she had any conversations with Duerring. (M. Balliet Dep., pp. 115, 129.)  During her deposition, she testified that she and Craig Balliet relied on the samples provided to them in making their findings in the Latta matter. (M. Balliet Dep., p. 47.)

In the instant action, Plaintiffs claim that the Barker & Herbert Defendants violated the Lattas' Fourth, Fifth, Sixth and Fourteenth Amendment rights, including violations of the due process clause, which allegedly deprived the Lattas of their right to receive a fair trial, and that resulted in their wrongful conviction and imprisonment.  (Sec. Am. Compl., Count VI, ¶ 28.)  Specifically, Plaintiffs allege the Barker & Herbert Defendants functioned as the arm of state actors, failed to fully and fairly investigate the fire scene, failed to provide an accurate and reliable lab analysis, failed

----

[2]The parties have not described in detail what a "chromatogram" is, or defined it for this Court.  According to Webster's Dictionary, a chromatogram is "the pattern formed on the absorbent medium by the layers of components separated by chromatography."  In turn, chromatography is defined as "a process in which a chemical mixture carried by a liquid or gas is separated into components as a result of differential distribution of the solutes as they flow around or over a stationary liquid or solid phase."  Webster's Ninth New Collegiate Dictionary (1986).

to testify truthfully and fairly at the Lattas' trial, withheld exculpatory evidence, and conspired with other defendants to falsely and deliberately determine that arson had been committed by the Lattas. (Sec. Am. Compl., Count VI, ¶¶ 21, 24, 25, 26.)

The Barker & Herbert Defendants contend that summary judgment is appropriate for four reasons. First, Defendants argue Plaintiffs' claims are barred by the applicable statute of limitations. Second, Defendants claim they are private citizens, not Governmental employees, and therefore were not acting under the color of state law. Third, Defendants claim they are immune from liability on any claim that they gave false testimony at Plaintiffs' criminal trial. Finally, Defendants argue that the vicarious liability claim fails under section 1983. Plaintiffs argue that summary judgment is not warranted for any of these reasons.


DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar*

-6-

*Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant.  *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989).  "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of

-7-

material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.  In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

To state a claim under section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *see also Cunningham v. Southlake Ctr. for Mental Health*, 924 F.2d 106, 107 (7th Cir. 1991).  The preliminary step in any section 1983 claim is to determine which of Plaintiffs' substantive constitutional rights were allegedly violated.  *Spiegel v. Rabinovitz*, 121 F.3d 251, 254 (7th Cir. 1997).

Statute of Limitations

The Barker & Herbert Defendants contend that the claims against them are barred by the statute of limitations because Plaintiffs were

aware of the alleged unconstitutional actions of Walker and the Balliets much earlier than 2 years before the filing of the second amended complaint on April 6, 2004.[3]  Additionally, Defendants believe the Lattas' cause of action began accruing at the latest on March 16, 2001, when the Lattas' convictions were reversed by the Supreme Court of Indiana.  Therefore, Plaintiffs' claims would still be untimely because the second amended complaint was filed more than two years after their convictions were overturned.

In response, Plaintiffs argue that the statute of limitations for the conspiracy claim against the Barker & Herbert Defendants was tolled until Plaintiffs knew or reasonably knew that their claim existed.  Because Defendants fraudulently concealed their violation, contend Plaintiffs, the cause of action did not accrue until discovery was undertaken in this case.  Alternatively, Plaintiffs argue that pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), Plaintiffs' claims for conspiracy for wrongful imprisonment did not accrue until their criminal proceeding was terminated in their favor.  Because the charges were dismissed on August 23, 2002, Plaintiffs insist that the filing of the second amended complaint on April 6, 2004, adding the Barker & Herbert Defendants, was within the applicable 2-year statute of limitations.

---

[3]Plaintiffs filed their original complaint in this action on February 5, 2003.  However, the second amended complaint, filed on April 6, 2004, was the first time the Barker & Herbert Defendants were named as parties.

Indiana's two-year statute of limitations for personal injury actions applies to claims brought under section 1983. *See Brademas v. Indiana Hous. Fin. Auth.*, 354 F.3d 681, 685 (7th Cir. 2004) ("Claims brought under § 1983 are subject to the statute of limitations for personal injury claims of the state where the alleged injury occurred."); Ind. Code § 34-11-2-4 (providing that an action for injury to person, character, or property must be commenced within two years after the cause of action accrues). While state law determines the applicable statute of limitations period, "[f]ederal law determines when a claim accrues. A § 1983 claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Brademas*, 354 F.3d at 685 (quoting *Hondo, Inc. v. Sterling*, 21 F.3d 775, 778 (7th Cir. 1994)); *see also Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993).

Plaintiffs claim that under *Heck,* the statute of limitations did not begin to run until the charges were dismissed on August 23, 2002. In *Heck*, the Supreme Court set forth an accrual rule, holding that a damages claim that "would necessarily imply the invalidity of [a] conviction or sentence" may not be brought so long as the conviction stands. *Heck*, 512 U.S. at 487. In pertinent part, the *Heck* Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized

> to make such determination, or called into
> question by a federal court's issuance of a writ
> of habeas corpus, 28 U.S.C. § 2254. A claim for
> damages bearing that relationship to a conviction
> or sentence that has *not* been so invalidated is
> not cognizable under § 1983. Thus, when a state
> prisoner seeks damages in a § 1983 suit, the
> district court must consider whether a judgment
> in favor of the Plaintiff would necessarily imply
> the invalidity of his conviction or sentence; if
> it would, the complaint must be dismissed unless
> the plaintiff can demonstrate that the conviction
> or sentence has already been invalidated. But,
> if the district court determines that the
> plaintiff's action, even if successful, will *not*
> demonstrate the invalidity of any outstanding
> criminal judgment against the plaintiff, the
> action should be allowed to proceed, in the
> absence of some other bar to the suit.

*Id*. at 486-87.

In other words, a plaintiff seeking damages for an allegedly unconstitutional conviction or imprisonment, or for other harms stemming from unlawful actions that would render a conviction or sentence invalid, has no section 1983 cause of action until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus. If a judgment for the plaintiff "would necessarily imply the invalidity of his conviction or sentence," the plaintiff's section 1983 cause of action does not arise, and the statute of limitations does not begin to run, until the plaintiff's conviction has been invalidated. *Id.* at 487. However, if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff," his section 1983 cause of action arises, and the statute

of limitations begins to run, when the plaintiff knew or should have known that his constitutional rights were violated. *Id.* (emphasis in original.)  In *Heck*, the Court stated an example of a section 1983 suit that should be allowed to proceed are suits for damages for allegedly unreasonable searches.  *Id.* at 487 n.7.  Because of doctrines such as independent source, inevitable discovery, and harmless error, such an action, even it successful, would not necessarily imply that the plaintiff's conviction was unlawful.  *Id*.

Plaintiffs do not argue that, had they filed a section 1983 action earlier, it would necessarily have implied the invalidity of their conviction or sentence. Rather, Plaintiffs seem to concede that their action, even if successful, would not demonstrate the invalidity of an outstanding criminal judgment because their argument centers around whether Plaintiffs knew or should have known that their constitutional rights were violated. *Heck*, 512 U.S. at 487; *see also Behavioral Institute of Indiana, LLC v. Hobart City of Common Counsel*, 406 F.3d 926, 929 (7th Cir. 2005) (holding a claim accrues for section 1983 purposes when a plaintiff knows or should know that his or her constitutional rights have been violated).

Although Plaintiffs may have obtained what they believe to be additional evidence of Defendants' wrongdoing in this case during discovery, as set forth in Defendants' memorandum, Plaintiffs suspected at the time of trial that their constitutional rights were allegedly violated.  Jacqueline Latta testified during her deposition

that she had suspicions during the trial about Walker collecting a sample in addition to those collected by the LaPorte County Sheriff's Department, and she thought he was part of a conspiracy to wrongfully convict her. (J. Latta Dep., pp. 346-47.)

Roger Latta also knew at the time of the criminal trial that Walker's testimony was allegedly false, and he also always had the feeling that Walker was conspiring with officials regarding his prosecution. (R. Latta Dep., pp. 321-23, 336.) Additionally, Roger Latta knew at the time of his criminal trial that Walker, employed by Barker & Herbert, allegedly conducted an inadequate investigation by failing to look in the attic. (R. Latta Dep., p. 325.) By the time he was released from prison, Roger Latta also knew that Barker & Herbert had failed to provide his attorney with the samples tested. (R. Latta Dep., p. 326.) At trial, Roger Latta believed Walker did not testify in a full and candid manner, by failing to eliminate all potential accidental causes. (R. Latta Dep., p. 326-27.) The evidence in the record establishes that Plaintiffs knew or should have known that their constitutional rights were allegedly violated by the Barker & Herbert Defendants at the time of their criminal trial or, at the very latest, when they were released from prison on June 1, 2001. (J. Latta Dep., p. 345.)

Additionally, the Court agrees with Defendants that even if the statute of limitations was tolled during the time of the Lattas' incarceration, their convictions were overturned by the Indiana

Supreme Court on March 16, 2001.  Plaintiffs contend their cause of action did not accrue until the prosecutor elected to dismiss the charges against them on August 23, 2002; however, Plaintiffs cite no case law or other authority whatsoever in support of this proposition. The plain language of *Heck* establishes that, in order to recover damages for an allegedly unconstitutional conviction or imprisonment, a section 1983 plaintiff must first prove that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . ." *Heck*, 512 U.S. at 486-87.  Here, the conviction was reversed by the Supreme Court of Indiana on March 16, 2001, and Plaintiffs have put forth no compelling rationale why that date is not the date on which Plaintiffs' cause of action started to accrue.

Defendants have provided the Court with a case, *Smith v. Gonzales*, 222 F.3d 1220 (10th Cir. 2000), that is persuasive.  In *Smith*, defendant's conviction from his state criminal trial was vacated, and the Court remanded his habeas case to the district court. In invalidating the judgment in the state criminal trial, the Court found that the "prosecution did not fulfill its obligation to disclose . . . material exculpatory evidence," thereby violating the plaintiff's due process rights to a fair trial.  *Smith v. Secretary of New Mexico Dep't of Corrections*, 50 F.3d 801, 835 (10th Cir. 1995).

-14-

Following a new trial that resulted in a mistrial, the prosecution dismissed the case and released the defendant from prison. The plaintiff then filed a section 1983 suit based upon the alleged *Brady* violations. *See Brady v. Maryland*, 373 U.S. 83 (1963) (finding defendant's due process rights are violated when defendant requests exculpatory evidence from the prosecutor, and the prosecutor knowingly withholds the evidence.). Following the district court's granting of a motion to dismiss based upon the statute of limitations, the Tenth Circuit affirmed.

In *Smith*, like this case, the plaintiff insisted that the statute of limitations did not begin to run until the date he was released from prison. However, the *Smith* Court found that as of the date the conviction was vacated, "a § 1983 suit would not have demonstrated the invalidity of [defendant's] 1978 conviction since we had vacated that conviction." *Smith*, 222 F.3d at 1222. Furthermore, because of the holding in the habeas case, the prosecution was effectively prevented from withholding the same exculpatory evidence if the State decided to retry the defendant. *Id.* Thus, the Court found that as of the date defendant's conviction was vacated, a favorable judgment in a section 1983 action would not have rendered invalid an outstanding criminal judgment against the defendant. *Id.*

Similarly, in this case, when the Indiana Supreme Court vacated the Lattas' convictions in 2001, no potential retrial could have rendered invalid the Lattas outstanding criminal judgment. And,

because the Lattas' counsel received copies of the chromatograms during their claims for post-conviction relief, there could be no *Brady* violations in a retrial. As such, this Court finds that even if the statute of limitations began to run in this case at the latest on March 16, 2001, when the Indiana Supreme Court reversed the Lattas' convictions, because Plaintiffs did not file suit against the Barker & Herbert Defendants until April 6, 2004 (after the 2-year statute of limitations had run), their 1983 claims are time-barred.

<u>Under the Color of State Law</u>

Even assuming, *arguendo*, that Plaintiffs' 1983 claims were timely filed, they still lack merit. To prevail under section 1983, a plaintiff must prove a violation of a right secured by the Constitution and laws of the United States, and "must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *see also Case v. Milewski*, 327 F.3d 564, 566 (7th Cir. 2003); *Cunningham v. Southlake Ctr. for Mental Health*, 924 F.2d 106, 107 (7th Cir. 1991).

Defendants argue that, as a private laboratory, they did not act under the color of state law, and therefore cannot be found liable for any constitutional violations under section 1983. In response, Plaintiffs argue that the State cloaked the Barker & Herbert Defendants with authority through an employment or agency

-16-

relationship.  Specifically, Plaintiffs rely upon the actions of Craig Balliet.  They make no arguments relating to John Woalker or Margaret Balliet.

Plaintiffs are correct that "[a]lthough the conduct of private parties lies beyond the Constitution's scope in most instances, governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government and, as a result, be subject to constitutional constraints." *Morfin v. City of East Chicago*, 349 F.3d 989, 1003 (7th Cir. 2003) (citing *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 620 (1991)).  In determining whether to hold a private citizen liable for an alleged constitutional violation, a court must be guided by two principles: (1) "whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority"; and (2) "whether the private party charged with the deprivation could be described in all fairness as a state actor." *Id.*  The Supreme Court has emphasized that this inquiry must be made on a case by case basis, considering all the circumstances.  *Lugar v. Edmonson Oil Co.* 457 U.S. 922, 939 (1982).

With regard to the first prong, this case is similar to *Nygren v. Predovich*, 637 F. Supp. 1083 (D. Colo. 1986).  In *Nygren*, a private laboratory conducted blood tests at the direction of an investigator employed by the Colorado Attorney General. The laboratory asserted that it was not acting under the color of state law when it conducted

the blood tests and, thus, could not be held liable under section 1983 for the alleged violations of plaintiffs' constitutional rights. The plaintiffs argued that the testing of physical evidence is a traditional government function generally performed by law enforcement agencies and because the private lab elected to perform such functions, they acted under the color of state law. The *Nygren* Court declined to find that "scientific testing of physical evidence constitutes a traditional state function." *Id.* at 1088. *See also Atkins v. Garcia Lab.,* No. Civ. A 05-73272-DT, 2005 WL 2173542, at *2 (E.D. Mich. Sept. 1, 2005) (finding "the defendant cannot be held liable under § 1983, because a private laboratory is not a state actor."). The *Nygren* Court noted this situation was different than other cases where state action was found, because the laboratory in *Nygren* was not acting pursuant to a state statute and the laboratory testing did not rise to the level of an essential public function. *Nygren*, 637 F.Supp at 1088-89. As in *Nygren*, Plaintiffs here have set forth no state statute showing that the laboratory testing was required by state law. Thus, in this case, the claimed constitutional deprivation did not result from the exercise of a right or privilege having its source in state authority. *Morfin*, 349 F.3d at 1003.

The Barker & Herbert Defendants may, however, be deemed to have acted under color of state law and, thus, be found liable under section 1983 for conspiracy, if the Barker & Herbert Defendants "agreed with state officials to engage in a prohibited action in

violation of plaintiffs' constitutional rights." *Nygren*, 637 F. Supp. at 1089 (citations omitted).  "A private individual has acted under color of law if there was a concerted effort between the individual and a state actor." *Hanania v. Loren-Maltese*, 212 F.3d 353, 356 (7th Cir. 2000).  Establishing section 1983 liability through a conspiracy theory requires that "(1) the private individual and a state official reached an understanding to deprive the plaintiff of her constitutional rights and (2) the private individual was a willful participant in joint activity with the state or its agents." *Id.*

In this case, Plaintiffs have put forth no evidence whatsoever that any of the Barker & Herbert Defendants had an agreement with any of the state officials to deprive Plaintiffs of their constitutional rights.  Plaintiffs claim that Defendants and the State agreed to withhold the chromatograms, violating Plaintiffs' constitutional rights.  However, as Defendants point out, the subpoena duces tecum at issue did not specifically request the actual chromatograms.  (C. Balliet Dep. I, Ex. 9.) Further, on February 23, 1990, Craig Balliet did indeed send copies of the chromatograms to prosecutor, Scott Duerring. (C. Balliet Dep. I, p. 84, Ex. 8.)  Lastly, this Court agrees that *Brady* imposes a duty on prosecutors to share exculpatory evidence under *Brady* with the defense; however, Plaintiffs have put forth no case law that extends *Brady's* obligations to lab technicians to share exculpatory evidence.  *See Mowbray v. Cameron County, Texas*, 274 F.3d 269, 278 (5th Cir. 2001) (reasoning that *Brady* imposes a duty

on prosecutors to share exculpatory evidence, but stating the court was unaware of any case extending *Brady* to police officers or lab technicians).

In sum, the Barker & Herbert Defendants did not act under the color of state law. Although their test results were shared with the State, the analysis they provided was not pursuant to a state statute, and did not rise to the level of an essential public function. Further, with regard to Plaintiffs' claim of conspiracy, Plaintiffs have failed to set forth any agreement that the Barker & Herbert Defendants had with the State to deprive the Lattas of their constitutional rights.

Immunity As Testifying Experts

The Barker & Herbert Defendants contend that John Walker and Craig Balliet are immune from liability as testifying experts. Additionally, Walker and Craig Balliet claim they are entitled to immunity based upon Plaintiffs' allegations that they conspired with the prosecutor to commit perjury, and are entitled to immunity for all of their activities in connection with the case. Plaintiffs respond, arguing that absolute immunity does not apply under the *Brady* claim, or the claim for withholding exculpatory evidence.

The Supreme Court has held that witnesses at trials are absolutely immune from suits under section 1983 for providing false testimony. *Briscoe v. LaHue*, 460 U.S. 325, 342-43 (1983). The

-20-

rationale behind this general rule is to prevent the harassment of witnesses and to promote unrestrained testimony in criminal cases. *Id.* This immunity extends to claims of conspiracy with the prosecutor to commit perjury as well. *See House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992).

It is true that where prosecutors withhold exculpatory evidence, they are not immune. *See Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001); *Ienco v. City of Chicago*, 286 F.3d 994, 1000 (7th Cir. 2002) (finding the withholding of exculpatory information is not protected by absolute immunity). Whether a true *Brady* claim exists is a question for the district court. *Manning v. Miller*, 355 F.3d 1028, 1032 (7th Cir. 2004).

Here, the undisputed evidence shows that Craig Balliet turned over copies of the chromatograms to the prosecutor. (C. Balliet Dep. I, p. 69, Ex. 12, p. 84, Ex. 8.) Plaintiffs complain that the actual chromatograms created by Barker & Herbert were never disclosed, however, the plain text of the subpoena shows that no such tests were requested.

Furthermore, although *Brady* requires exculpatory evidence to be disclosed, the government need not disclose inculpatory evidence. *See United States v. Pollard*, 994 F.2d 1262, 1266 (7th Cir. 1993); *United States ex rel. Ruddock v. Briley*, 216 F. Supp. 2d 737, 748 (N.D. Ill. 2002). "Withholding evidence constitutes a *Brady* violation only if it is both favorable to the accused and material." *Pollard,* 994 F.2d

at 1266.  According to Plaintiffs' own expert witness, John DeHaan, he agreed with the following conclusions reached by Craig Balliet from reviewing the chromatograms:  the sample taken from the Latta's doorway contained a medium petroleum distillate; the medium petroleum distillates can be used as accelerants; and the Lady Lee charcoal container found in the Latta's house is also a medium petroleum distallate.  (DeHaan Dep., pp. 37, 49, 233, 56.) As pointed out by Defendants, DeHaan's main disagreement with Craig Balliet is DeHaan's opinion that the sample found under the doorway of the Latta's house did not come from the same source as the Lady Lee charcoal starter, even though they were both medium petroleum distillates.  (DeHaan Dep., p. 41.)  Craig Balliet maintained that although both samples contained medium petroleum distillates, it was impossible to determine whether the Lady Lee charcoal starter was the source of the medium petroleum distallate found at the Lattas' doorway.  (C. Balliet Dep. II, pp. 89, 101, 135.)  Therefore, Plaintiffs have failed to establish that the chromatograms contradict the testimony of Craig Balliet. Rather, the chromatograms seem inculpatory, not exculpatory.  As such, Plaintiffs cannot maintain a true *Brady* claim, and  Walker and Craig Balliet are entitled to immunity.

Vicarious Liability as to Barker & Herbert

The Barker & Herbert Defendants argue that they are entitled to judgment as a matter of law because they cannot be held vicariously

liable for the actions of their employees.  In response, Plaintiffs contend that Defendants are liable because they were acting under the color of state law.  Additionally, Plaintiffs argue that Defendants are liable because they had a policy that when Barker & Herbert Labs received a subpoena, they would first contact their client to get permission to release the materials.

This Court has already concluded that the Barker & Herbert Defendants were not acting under the color of state law.  *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978), established that a government entity cannot be held vicariously liable under section 1983 for the acts of its employees. In order for a municipality to be held liable under section 1983, the municipality must have adopted a "policy or custom" that deprived the plaintiff of his constitutional rights.  *Bennett v. Roberts*, 295 F.3d 687, 699 (7th Cir. 2002) (citing *Monell*, 436 U.S. at 694; *Kujawski v. Bd. of Comm'rs of Bartholomew Co.*, 183 F.3d 734, 737 (7th Cir. 1999)). Just as a municipal corporation cannot be held vicariously liable under *respondeat superior*, neither can a private corporation.  The Seventh Circuit has held that a private corporation cannot be vicariously liable under section 1983 for the deprivation of civil rights by its employees.  *See Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 (7th Cir. 2002); *Islander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (a "private corporation is not vicariously liable under § 1983 for its employees' deprivations of

others' civil rights.").  Therefore, Barker & Herbert Labs is not vicariously liable for any alleged constitutional violation committed by its employees John Walker, Craig Balliet, and Margaret Balliet.

Even assuming, *arguendo*, that Barker & Herbert Labs was acting under the color of state law, Plaintiffs' claim against them still fails because Plaintiffs cannot establish that the alleged express policy caused a constitutional violation.  In order to demonstrate that a municipal policy has violated their civil rights under section 1983, Plaintiffs must allege that:

> (1) the [municipality] had an express policy that, when enforced, causes a constitutional deprivation; (2) the [municipality] had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority.

*McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000) (citation omitted).

In this case, Plaintiffs allege that Barker & Herbert Labs had a policy that when they received a subpoena, they would first contact their client to get permission to release the materials.  Taking as true that Barker & Herbert did possess such a policy, Plaintiffs have failed to show that a constitutional deprivation occurred based upon this policy.  Moreover, the Court sees nothing wrong with checking with a client prior to turning over materials pursuant to a subpoena so that the client may address privilege issues.  Plaintiffs have set

forth no case law or other authority supporting their proposition that Barker & Herbert's policy was improper, nor have they proven that the policy was linked to Plaintiffs' alleged constitutional injury.  As such, Barker & Herbert is entitled to summary judgment.


CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment of Defendants, John Walker, Craig Balliet, Margaret Balliet, and Barker & Herbert Analytical Laboratories, Inc. [DE # 135], is **GRANTED**. The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiffs' claims against Defendants, John Walker, Craig Balliet, Margaret Balliet, and Barker & Herbert Analytical Laboratories, Inc.


**DATED:  October 25, 2005**          **/s/RUDY LOZANO, Judge**
                                      **United States District Court**